PEOPLE v McKENZIE

Docket No. 161070. Submitted March 8, 1994, at Detroit. Decided June 6, 1994, at 9:35 A.M.

Bernard M. McKenzie, Jr., was charged in the Wayne Circuit Court with one count of armed robbery and one count of possession of a firearm during the commission of a felony. He brought a motion to suppress evidence of the complainant's identification of him at a precustodial photographic lineup that was conducted without counsel being present to represent the defendant. The court, Susan Bieke Neilson, J., granted the motion on the basis that the defendant had become the focus of the investigation at the time of the lineup and, therefore, was entitled to counsel at the lineup. The prosecutor appealed by leave granted.

The Court of Appeals held:

1. The trial court erred in holding that the defendant was entitled to counsel at the precustodial photographic lineup because he was the focus of the investigation. Pursuant to the holding in People v Kurylczyk, 443 Mich 289 (1993), the "focus test," originating in People v Cotton, 38 Mich App 763 (1972), is no longer applicable. A defendant is not entitled to counsel at a precustodial investigatory photographic lineup unless the circumstances underlying the investigation and the lineup are "unusual," i.e., where the defendant has been contacted or questioned about the incident and taken · into custody and released before the lineup was conducted without the presence of counsel for the defendant or where the witness has previously made a positive identification and the clear intent of the lineup is to build a case against the defendant.

2. The defendant was not entitled to counsel at the photographic lineup because he was not in custody and unusual

REFERENCES

Am Jur 2d, Criminal Law §§ 802, 803, 820.

Accused's right to counsel under the Federal Constitution—Supreme Court cases. 18 L Ed 2d 1420.

Validity, under Federal Constitution, of police lineup or showup procedures—Supreme Court cases. 34 L Ed 2d 839.

circumstances that would entitle him to the presence of counsel did not exist.

3. The complainant's naming defendant as the robber was not a previous identification of the defendant under the facts of this case.

Reversed.

EVIDENCE — PHOTOGRAPHIC LINEUPS — RIGHT OF COUNSEL.

There is no right to counsel at a photographic lineup unless the accused is in custody or unusual circumstances exist under which an accused would be entitled to counsel; such circumstances include where the accused is contacted or questioned about the incident and taken into custody and released before the lineup or where the witness has previously made a positive identification and the clear intent of the lineup is to build a case against the accused.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Karen M. Woodside,* Assistant Prosecuting Attorney, for the people.

*Cornelius Pitts,* for the defendant.

Before: CAVANAGH, P.J., and WAHLS and G. W. CROCKETT III,* JJ.

WAHLS, J. The prosecution appeals by leave granted from the trial court's suppression of evidence of the complainant's identification of the defendant at a precustodial photographic lineup that was conducted without counsel present to represent defendant. We reverse.

This case involves the alleged armed robbery of Melvin Langston on July 23, 1989, by a black male who purported to be a police officer for the City of Inkster, Michigan. Defendant is a black male who

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

was on duty as an auxillary officer of the Inkster Police Department at the time of the alleged robbery. Shortly after the incident, Langston telephoned the Inkster Police Department in an attempt to ascertain the assailant's identity. After Langston gave a physical description of the police officer in question, the unidentified male to whom he was speaking stated that the description sounded like Officer McKenzie (defendant). Langston reported the alleged robbery to the Inkster chief of police on the following morning and offered defendant's name as a suspect.

At a January 11, 1992, evidentiary hearing (the morning of the scheduled trial), testimony was taken from Michigan State Police Sergeant Richard Hayward, the officer in charge of investigating the alleged robbery. Hayward explained that he initially spoke with the Inkster chief of police and learned the names of the police officers working on the day shift on the date in question. Two of the officers were black: defendant and another policeman who was riding with another officer.

Sergeant Haywood asked Langston to take a polygraph test in Ann Arbor to determine whether his allegations were true. After the polygraph test was conducted, Haywood showed Langston a photographic lineup of six black police officers, which included defendant's picture and five pictures of Michigan State Police officers who were not suspects. Langston selected defendant's picture. Haywood claimed that he would have had Langston view another photographic lineup containing a photograph of the other black policeman on duty for the Inkster Police Department at the time in question if Langston had not identified defendant in the first lineup. Haywood explained that the purpose of the lineup was to eliminate possible suspects. Haywood admitted that defendant was

never contacted about the lineup and that counsel for defendant was not present at the time.

Defendant did not call any witnesses of his own at the evidentiary hearing, but secured admission of Langston's previous testimony at the preliminary examination regarding his initial phone call to the Inkster Police Department and subsequent report of the alleged robbery to the Inkster chief of police.

The trial court ruled that the fact that defendant was not in custody at the time of the photographic lineup was not necessarily dispositive of his right to counsel at the lineup, and that counsel for defendant was required at the lineup if the police investigation had focused upon defendant at that time. The court further found that the police were seeking to elicit identification evidence so as to build a case against defendant, rather than to extinguish the case against an innocent bystander. Relying upon Langston's testimony at the preliminary examination, as well as Officer Haywood's testimony that defendant's photograph was used for the first photographic lineup instead of the photograph of the other suspected Inkster policeman, the trial court concluded that the photographic lineup conducted without the presence of counsel for defendant was improper and that the identification testimony resulting therefrom must be suppressed because defendant had become the focus of the investigation at the time of the lineup.[1]

On appeal, the prosecution argues that the court erred in holding that defendant was entitled to

---

[1] The prosecution declined to present evidence regarding the issue whether there would be an independent basis for Langston's identification of defendant, indicating its intent to explore instead the possibility of an interlocutory appeal from the trial court's suppression ruling.

counsel at the photographic lineup because he was the focus of the investigation. We agree.

Recently, the Michigan Supreme Court addressed the issue whether the right to counsel attached at a precustodial photographic lineup. *People v Kurylczyk,* 443 Mich 289, 302; 505 NW2d 528 (1993). In *Kurylczyk,* the defendant was the primary suspect in a police investigation of a bank robbery, although he was not the only suspect the police were investigating. The defendant had not been arrested and had not been identified by any witnesses as the robber when the police conducted a photographic array. The array, which included the pictures of the defendant and another suspect, was shown to two bank tellers who both identified the defendant as the bank robber. Afterward, the defendant was arrested.

The Supreme Court acknowledged the decisions from this Court that have held that counsel is required at a photographic lineup when the suspect is the focus of the investigation, citing *People v DeMeyers,* 183 Mich App 286; 454 NW2d 202 (1990), *People v Johnson (On Remand),* 180 Mich App 423; 447 NW2d 800 (1989), and *People v McFadden,* 159 Mich App 796; 407 NW2d 78 (1987), but also noted that it had never applied the focus test to a precustodial photographic lineup except in a nonbinding opinion signed by two justices.[2] *Kurylczyk, supra,* pp 298-300. In analyzing the case from which the focus test originated, *People v Cotton,* 38 Mich App 763; 197 NW2d 90 (1972), it was pointed out that Cotton had been released from custody, after two corporeal lineups had been conducted with counsel present, at the time the photographic lineup was conducted without the presence of counsel. The *Kurylczyk* Court

[2] *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977).

observed that *Cotton*'s holding that the defendant had a right to counsel at the noncustodial photographic lineup was based upon the "unusual circumstances" of the case. *Kurylczyk, supra,* pp 299-300.

The *Kurylczyk* Court referred to an earlier case, *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974), where it unanimously refused to apply the requirement of counsel at a precustodial photographic lineup, and compared the similarities of the photographic lineup involving Kurylczyk to the one conducted in *Lee:*

> On the basis of various sources of information, defendant Kurylczyk, like defendant Lee, was a primary suspect in a police investigation of a robbery. As in *Lee,* defendant Kurylczyk had not previously been arrested, had not yet been identified by any witness as the robber, and was not the only suspect whom the police were investigating. Although the police had more inculpatory evidence against Kurylczyk at the time of his photographic array than the police in *Lee* had against their suspect, the detectives in this case had not narrowed their investigation only to Kurylczyk. In the photographic array shown to the witnesses, the photograph of another suspect was included in addition to the photograph of defendant Kurylczyk. Moreover, on the very day that defendant was being interviewed, police were called back to the bank to investigate another potential suspect. [*Kurylczyk, supra,* p 301.]

Finding that the circumstances of defendant Kurylczyk's lineup were similar to the lineup conducted in *Lee,* the Court stated:

> Under these circumstances, the appointment of counsel is neither necessary or feasible. At the early stage of an investigation of an unsolved crime, investigators cannot predict whether a wit-

ness will recognize a particular suspect as the perpetrator of that crime. Thus, it is impossible to know whether a photographic array will help to "build a case against the defendant" or will "extinguish a case against an innocent bystander." *Cotton, supra*, 38 Mich App 769-770. Often, the distinction between those two courses of action is apparent only after an eyewitness has made, or failed to make, an identification. *For this reason, we agree with the unanimous decision in* Lee *that counsel is not required at precustodial, investigatory photographic lineups like the one that was used in this case:*

"Defense counsel's argument that the right to counsel attaches once 'an investigation has focused' on a particular suspect is an inaccurate one, insofar as it is supposed to refer to 'precustody' investigations." [391 Mich 625.]

*In the case of photographic identifications, the right of counsel attaches with custody. [Kurylczyk, supra,* pp 301-302; emphasis added.]

On the basis of *Kurylczyk,* the focus test is no longer applicable. It further appears from the opinion that a defendant is not entitled to counsel at a precustodial investigatory photographic lineup unless the circumstances underlying the investigation and the lineup are "unusual." Although the Michigan Supreme Court did not elaborate or clearly explain the unusual circumstances under which a defendant would be entitled to counsel, this Court believes it would have to be similar to the circumstances in *Cotton* or where the witness has previously made a positive identification and the clear intent of the lineup is to build a case against the defendant.

Thus, this Court holds that defendant was not entitled to counsel at the photographic lineup because he was not in custody. Moreover, because defendant was not contacted or questioned about

the incident before the lineup and taken into custody and released, unusual circumstances did not exist for finding that he was entitled to counsel at the lineup. Furthermore, this Court finds that Langston's naming defendant as the robber was not a previous "identification" of defendant.[3] Accordingly, this Court reverses the trial court's decision to suppress the complainant's identification testimony.

Reversed.

---

[3] Indeed, the fact that Langston was required to take a polygraph examination immediately before he viewed the photographic lineup indicates that, at that point, the investigating authorities were unsure regarding whether any crime had occurred at all and were not building a case against any particular suspect.