PEOPLE v LEE

Docket No. 219538. Submitted October 10, 2000, at Grand Rapids. Decided November 3, 2000, at 9:05 A.M. Leave to appeal sought.

Ronald Lee was convicted by a jury in the Muskegon Circuit Court, Timothy G. Hicks, J., of armed robbery and was sentenced to twenty-five to forty years of imprisonment. The defendant appealed.

The Court of Appeals *held*:

1. There was sufficient evidence at trial to support the defendant's conviction. The elements of armed robbery—an assault and a felonious taking of property from the victim's person or presence while the defendant was armed with a dangerous weapon—were established through the testimony of witnesses other than the eighty-one-year-old victim, who died before the trial commenced. Three people, a former daughter-in-law of the victim, a police detective, and a neighbor of the victim, testified that the victim had told them that his "yard.boy," a reference to the defendant, had committed the armed robbery. A cellmate of the defendant testified that the defendant had admitted assaulting the victim with a lead pipe. The former daughter-in-law and the neighbor testified that the victim always had a lot of cash on him and that there was no cash on the victim after he was assaulted. The detective testified that the victim had told him that the victim had money on him before the defendant knocked him out with the lead pipe and that the money was gone when the victim awoke.

2. The trial court did not abuse its discretion in allowing into evidence the hearsay testimony of the former daughter-in-law, the neighbor, and the detective regarding the victim's statements to them identifying the defendant as the perpetrator of the armed robbery. The testimony was properly admissible under MRE 803(24), the catchall exception to the hearsay rule. Pursuant to MRE 803(24), a statement not specifically covered by any of the other twenty-three specific exceptions provided in MRE 803 but having equivalent circumstantial guarantees of trustworthiness may be admitted if the court determines that the statement is offered as evidence of a material fact, the statement is more probative on the point for which it is offered than any other evidence that the pro-

ponent can produce through reasonable efforts, and the general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence. Admission under MRE 803(24) requires a showing of unavailability of the declarant and that the statement sought to be admitted bears adequate indicia of reliability. The totality of the circumstances surrounding the making of the statement must be considered when determining whether the statement has adequate indicia of reliability. Such circumstances include the spontaneity of the statement; the consistency of the statement; lack of motive to fabricate or lack of bias; the reason the declarant cannot testify; the voluntariness of the statement, i.e., whether it was made in response to a leading question or made under undue influence; personal knowledge of the declarant about the matter on which the declarant spoke; to whom the statement was made, e.g., a police officer who was likely to investigate further; and the time frame within which the statement was made. The court may not consider whether evidence produced at trial corroborates the statement. All relevant considerations for determining whether the disputed hearsay testimony in this case was admissible under MRE 803(24) indicate that it was admissible.

3. The defendant's right to counsel was not violated at the precustodial photographic lineup at which the defendant was identified as the perpetrator of the armed robbery. A defendant is entitled to counsel at a precustodial investigatory photographic lineup only when the circumstances underlying the investigation and the lineup are unusual, such as where the witness has previously made a positive identification and the clear intent of the lineup is to build a case against the defendant. Because there were no such unusual circumstances in this case, the defendant was not entitled to counsel at the photographic lineup.

4. The trial court's failure to use CJI2d 7.8 when instructing the jury about identification does not constitute error requiring reversal. The defendant did not request that CJI2d 7.8 be given to the jury or otherwise object to the instructions that were given about identification. The defendant therefore failed to preserve for appeal the issue concerning the instructions on identification. Furthermore, the instructions that were given accurately stated the applicable law.

5. Trial counsel's failure to request CJI2d 7.8 or another instruction on identification did not constitute ineffective assistance of counsel. The defendant has not shown that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there was a reasonable probability that the result

of the proceeding would have been different. Trial counsel was not ineffective at the sentencing hearing. The defendant has not shown that the outcome of the sentencing proceeding would have been different had counsel allocuted on the defendant's behalf, nor has the defendant proffered one mitigating factor or circumstance that counsel should have brought to the trial court's attention and that would have changed the defendant's sentence.

6. The trial court considered all applicable factors and standards in sentencing the defendant. The sentence imposed is within the sentencing guidelines and thus is presumptively proportionate. The defendant has not shown that there are unusual circumstances that render his presumptively proportionate sentence disproportionate. Given the defendant's criminal history and the circumstances surrounding the armed robbery, the sentence imposed is proportionate.

Affirmed.

1. ROBBERY — ARMED ROBBERY.

The essential elements of armed robbery include an assault and a felonious taking of property from the victim's person or presence while the defendant is armed with a dangerous weapon; armed robbery is a specific intent crime, and the prosecutor must establish that the defendant intended to permanently deprive the owner of property (MCL 750.529; MSA 28.797).

2. EVIDENCE — HEARSAY — CATCHALL EXCEPTION.

An out-of-court statement not specifically covered by any of the exceptions to the hearsay rule provided in MRE 803 but having equivalent circumstantial guarantees of truthworthiness may be admitted if the court determines that the statement is offered as evidence of a material fact, the statement is more probative on the point for which it is offered than any other evidence the proponent can produce through reasonable efforts, and the general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence (MRE 803[24]).

3. EVIDENCE — HEARSAY — CATCHALL EXCEPTION.

An out-of-court statement, in order to be admitted into evidence under the catchall exception of MRE 803(24), must be supported by a showing of unavailability of the declarant and of adequate indicia of reliability; the totality of the circumstances surrounding the making of the statement must be considered when determining whether there is adequate indicia of reliability; factors to be considered include the spontaneity of the statement; the consistency of the statement; lack of motive to fabricate or lack of bias; the reason the declarant cannot testify; the voluntariness of the statement,

i.e., whether it was made in response to a leading question or made under undue influence; personal knowledge of the declarant about the matter on which the declarant spoke; to whom the statement was made, e.g., a police officer who was likely to investigate further; and the time frame within which the statement was made; the court, however, may not consider whether evidence produced at trial corroborates the statement.

4. CRIMINAL LAW — PRECUSTODIAL PHOTOGRAPHIC LINEUP — RIGHT TO COUNSEL.

A defendant is entitled to counsel at a precustodial investigatory photographic lineup only when the circumstances underlying the investigation and the lineup are unusual, such as where the witness has previously made a positive identification and the clear intent of the lineup is to build a case against the defendant.

5. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

A defendant seeking to establish a claim of ineffective assistance of counsel must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there was a reasonable probability that the result of the proceeding would have been different; the defendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive the defendant of a fair trial.

6. SENTENCES — PROPORTIONALITY — SENTENCING GUIDELINES.

A sentence that falls within the sentencing guidelines is presumptively neither severe nor unfairly disparate and therefore is presumptively proportionate; in order to overcome the presumption that the sentence is proportionate, the defendant must present unusual circumstances that would render the sentence disproportionate.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Tony Tague*, Prosecuting Attorney, and *Tamara L. Hoffstatter*, Assistant Prosecuting Attorney, for the people.

*Martin J. Beres*, for the defendant on appeal.

Before: FITZGERALD, P.J., and HOOD and MCDONALD, JJ.

PER CURIAM. Defendant was convicted, following a jury trial, of armed robbery, MCL 750.529; MSA 28.797. He was sentenced to twenty-five to forty

years' imprisonment, and he appeals as of right. He challenges the sufficiency of the evidence, the propriety of allowing other witnesses to testify about the victim's identification, the jury instructions, a photographic lineup, and his sentence. We affirm.

The charges arose out of the armed robbery of Manson Grant, an eighty-one-year-old man for whom defendant did yard work and odd jobs. The victim identified defendant as the person who assaulted and robbed him. Unfortunately, the victim died before trial, but the prosecutor's attempt to amend the information to charge defendant with murder was unsuccessful.

Defendant's first argument may be summarized as a contention that there was insufficient evidence that he was the person who assaulted the victim and insufficient evidence that he feloniously took any property from the victim's person or presence. Neither argument has merit.

The evidence, when viewed in a light most favorable to the prosecution, was sufficient to show that the essential elements of the crime were proved beyond a reasonable doubt.

In reviewing the sufficiency of the evidence, all conflicts with regard to the evidence must be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997). Further, this Court should not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). And circumstantial evidence and reasonable inferences arising from that evidence can constitute satis-

factory proof of the elements of a crime. *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993).

The essential elements of the charged crime include (1) an assault and (2) a felonious taking of property from the victim's person or presence (3) while the defendant is armed with a dangerous weapon described in the statute. *People v Norris*, 236 Mich App 411, 414; 600 NW2d 658 (1999). "Robbery is committed only when there is larceny from the person, with the additional element of violence or intimidation." *People v Harding*, 443 Mich 693, 731; 506 NW2d 482 (1993) (RILEY, J.), citing *People v Chamblis*, 395 Mich 408, 425; 236 NW2d 473 (1975), overruled in part *People v Stephens*, 416 Mich 252; 330 NW2d 675 (1982). Armed robbery is a specific intent crime, and the prosecutor must establish that the defendant intended to permanently deprive the owner of property. *People v King*, 210 Mich App 425, 428; 534 NW2d 534 (1995).

At trial, there was testimony from Donette Bolden, the victim's former daughter-in-law, Detective Clifton Johnson, and Renee Williams, a neighbor, that the victim indicated that the "yard boy" committed the crime. Bolden testified that defendant was the only person that the victim called "yard boy." Defendant's speculation that the victim may have called other people "yard boy" is completely unsupported by the record developed at trial. Also, John Jamerson, defendant's cellmate, testified that defendant admitted committing the assault on the victim with a lead pipe. Finally, the victim picked defendant out of a photographic lineup. Viewing this testimony in a light most favorable to the prosecution, there clearly was sufficient identity evidence for the jury to determine that

defendant was the perpetrator of the assault and rob-
bery on the victim.

There was also sufficient evidence that there was a
felonious taking of property from the victim. Bolden
and Williams testified that it was a known fact that
the victim kept large sums of cash on his person.
Bolden testified that the victim kept his wallet
attached to his person by a chain. Bolden also testi-
fied that on the evening of July 24, 1995, she saw the
victim with a "wad" of cash after he gave her some
money to pay his bills. When the victim was found
the following afternoon, his wallet was not attached
to his pants by a chain. It was found two to three feet
away from him and was empty. The victim's pockets
were turned inside out. There was evidence that the
victim and the defendant argued about $25 earlier in
July and again, by defendant's admission to Jamerson,
on the day of the assault. On July 25, 1997, the day
the victim was found, defendant went to a pawn shop
and redeemed two items at a cost of almost $300.
Further, the victim told Johnson that he had money
on his person and, after defendant hit him with the
pipe and knocked him out, he awoke to find his pock-
ets empty and the money gone. Bolden additionally
testified that after the incident not one penny of
money was found in victim's house.

From this evidence, a jury could reasonably infer
that the victim had cash on his person at the time
defendant came to his house and that defendant
deprived him of that cash, leaving him incapacitated
and with an empty wallet and pockets. Therefore,
viewed in a light most favorable to the prosecution,
the evidence was sufficient to indicate that defendant
assaulted the victim, that defendant intended to and,

in fact, took property from the victim, and that defendant was armed with a lead pipe. Next, defendant argues that the trial court abused its discretion when it allowed Bolden, Johnson, and Williams to testify about statements the victim made. We disagree and find that the statements were properly admitted pursuant to MRE 803(24), the catchall exception to the hearsay rule.

MRE 803(24) provides in relevant part:

> *Other Exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The only case interpreting MRE 803(24) is *People v Welch*, 226 Mich App 461; 574 NW2d 682 (1997), in which the defendant argued that the trial court improperly refused to allow a hearsay statement into evidence under MRE 803(24). *Welch, supra,* pp 464-468. An officer had recorded, in his report, that a witness at the chaotic scene of the crime approached the officer and indicated that the victim, before jumping off a bridge, said she was going to kill herself. The officer observed the witness, who was named Simmons, laughing and giggling about the situation before approaching and making the statement. The officer did not get any information from Simmons about where Simmons was when, or under what circumstances, he allegedly heard the victim state that

she was going to kill herself. The trial court refused to allow the hearsay statement under MRE 803(24), finding that no other person had heard the victim make such a statement, that there was no indication that Simmons heard the statement himself, that the group was laughing and giggling about the incident, which reduced the trustworthiness of the statement, that sixteen minutes passed between the time Simmons allegedly heard the statement and the time he told the officer about it, that the scene was chaotic, and that the officer did not write down the statement as Simmons gave it to him. *Welch, supra,* pp 465-466. This Court noted that MRE 803(24) had not been interpreted in Michigan and that it needed to look at analogous cases discussing the federal catchall exceptions, FRE 803(24) and 804(b)(5):

> In *United States v Barrett*, 8 F3d 1296, 1300 (CA 8, 1993), the Eighth Circuit Court of Appeals considered the issue whether hearsay evidence of a child's statements concerning her mother's abuse were sufficiently trustworthy to be admissible under FRE 803(24):
>
> "In order to comply with the Sixth Amendment, hearsay statements offered into evidence must bear 'adequate "indicia of reliability." " ' This reliability requirement is fulfilled when the hearsay exception either ' " "falls within a firmly rooted hearsay exception" " ' or occurs under circumstances with ' " "particularized guarantees of trustworthiness." " ' Because the residual exception [FRE 803(24)] 'is not a firmly rooted hearsay exception for Confrontation Clause purposes,' these . . . statements must be analyzed for particularized guarantees of trustworthiness. In order to determine whether a statement meets this standard, the trial court must examine the totality of the circumstances surrounding the making of the statement and those rendering the declarant particularly worthy of belief. [Citations omitted.]"

In *Barrett*, the court noted that the trustworthiness factors appropriate for it to consider in that case with respect to the child's statements included (1) the spontaneity of the statement, (2) the consistent repetition of the statement, (3) the child's lack of a motive to fabricate, and, (4) the reason for the child's inability to testify at trial. *Id.*

In *United States v Shaw*, 69 F3d 1249, 1253 (CA 4, 1995), the Fourth Circuit Court of Appeals explained that the trustworthiness requirement contained in FRE 804(b)(5) "serves as a surrogate for the declarant's in-court cross-examination" and that, therefore, a statement's trustworthiness "is satisfied if the court can conclude that cross-examination would be of 'marginal utility.' "

In *United States v Trenkler*, 61 F3d 45, 58 (CA 1, 1995), the First Circuit Court of Appeals explained that the trustworthiness requirement of FRE 803(24) "is largely fact driven, and its focus will vary depending on the context in which the issue arises. A court, however, may consider whether the evidence shares reliability factors (e.g., personal knowledge, lack of bias) common to the other hearsay exceptions and whether the evidence, but for a technicality, would otherwise come within a specific exception. Essentially, the district court must determine whether the totality of the circumstances surrounding the statement establish its reliability sufficient enough to justify foregoing the rigors of in-court testimony (e.g., live testimony under oath, cross-examination) that ordinarily guarantee trustworthiness." [Citations omitted.] [*Welch, supra,* pp 467-468.]

Recently, in *Lilly v Virginia*, 527 US 116, 136; 119 S Ct 1887; 144 L Ed 2d 117 (1999), the Supreme Court stated:

The residual "trustworthiness" test credits the axiom that a rigid application of the [Confrontation] Clause's standard for admissibility might in an exceptional case exclude a statement of an unavailable witness that is incontestably probative, competent, and reliable, yet nonetheless outside of any firmly rooted hearsay exception. When a court can be confident—as in the context of hearsay falling within a

firmly rooted exception—that "the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility," the Sixth Amendment's residual "trustworthiness" test allows the admission of the declarant's statements. [Citations omitted.]

In *Lilly, id.*, p 138, the Court indicated that the prosecution may not "bootstrap" the trustworthiness of a declarant's statement by referring to evidence produced at trial.

"To be admissible under the Confrontation Clause,". . . "hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." [*Id.*, quoting *Idaho v Wright*, 497 US 805, 822; 110 S Ct 3139; 111 L Ed 2d 638 (1990).]

In *Wright, id.*, pp 813-814, the Court discussed the Confrontation Clause:

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

From the earliest days of our Confrontation Clause jurisprudence, we have consistently held that the Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause. We reaffirmed only recently that "[w]hile a literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable, this Court has rejected that view as 'unintended and too extreme.' " [Citations omitted.]

The Court further stated:

We noted [in *Ohio v Roberts*, 448 US 56; 100 S Ct 2531; 65 L Ed 2d 597 (1980)] that the Confrontation Clause "operates in two separate ways to restrict the range of admissible hearsay." *Ibid.* "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case . . ., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Ibid.* Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." [*Wright, supra*, p 814 (citations omitted).]

In *Wright*, the trial court allowed a medical doctor to testify about statements made by a 2½-year-old child regarding sexual abuse. *Id.*, pp 809-811. The child was too young to testify and was found to be incapable of communicating with the jury. *Id.*, p 816. She was thus unavailable within the meaning of the Confrontation Clause. *Id.* The trial court admitted her statements through the doctor under Idaho's residual hearsay rule, which is identical to MRE 803(24). *Wright, supra*, p 812. The Idaho Supreme Court found that the statements made to the doctor had no "particularized guarantees of trustworthiness." *Id.*, p 818. The United States Supreme Court agreed. In affirming, it indicated that "particularized guarantees of trustworthiness" must be shown from "the totality of the circumstances." *Id.*, p 819. "[T]he relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.*

> We think the "particularized guarantees of trustworthi-
> ness" required for admission under the Confrontation
> Clause must likewise be drawn from the totality of circum-
> stances that surround the making of the statement and that
> render the declarant particularly worthy of belief. . . . [W]e
> think that evidence admitted under the former requirement
> must . . . be so trustworthy that adversarial testing would
> add little to its reliability. [*Id.*, pp 820-821.]

The Supreme Court then outlined several factors to be considered when determining whether statements made by a child witness in a sexual abuse case are reliable. *Id.*, p 821. They include spontaneity, consistent repetition, use of terminology unexpected of a child of similar age, and lack of motive to fabricate. *Id.*, pp 821-822.

In *United States v Accetturo*, 966 F2d 631 (1992), reh den 976 F2d 741 (CA 11, 1992), the court looked at several factors when determining that the statements of the deceased victim were admissible under the catchall hearsay exception: the statement was written in the victim's handwriting; the statement was made voluntarily; the statement was given to law enforcement authorities, who were likely to investigate further; the victim agreed to assist police in the investigation, which indicated that he knew the veracity of his story would be tested; the victim was not responding to leading questions or undue police influence when the statements were made; the victim witnessed "first-hand" the events in his statement; the victim feared for his life and had no incentive to manufacture a statement that would alert the defendants that he had gone to the police. *Id.*, p 635.

In *United States v Colon-Miranda*, 992 F Supp 82 (D PR, 1997), like in *Accetturo*, the declarant was murdered before he could testify. The Court held that

the declarant's statement fell within the catchall exception to the rule against admitting hearsay. *Id.*, p 84.

> Looking to the circumstances surrounding declarant Rafael Cotto-Fuentes' statement, we find sufficient indicia of reliability and trustworthiness to allow this matter to proceed. Of course, the government must establish the necessary foundation. It is alleged that Cotto-Fuentes gave his May 24, 1994, statement to police voluntarily. Declarant came to the police following the first alleged attempt on his life on May 20, 1994, of his own free will. There is no indication the police pressured him to make the statement or gave or promised him anything in return for that statement. The statement was based on declarant's own personal knowledge. The scene declarant described gave him ample opportunity to observe his attackers, as well as their vehicle and license plate number. Moreover, the fact that declarant was eventually killed is corroboration that the life-threatening incident he described took place. Though declarant had previously been arrested and was cooperating with the police and the statement was not given under oath subject to cross-examination, and despite the fact that declarant made the statement four days after the incident, we find that the other circumstances surrounding the statement are sufficient indicia of trustworthiness for purposes of satisfying [the catchall exception.] [*Id.*, p 85.]

In *Sherley v Seabold*, 929 F2d 272 (CA 6, 1991), the victim, Pauline Lang, was eighty-two years old. She was robbed and beaten. She made statements about the attack to her neighbor, the police officers who responded to the scene, an emergency room nurse, and an investigating detective. *Id.*, p 273. Lang suffered from memory loss *before* the attack and the attack worsened her condition. *Id.*. The trial court nevertheless admitted her hearsay testimony, and the defendant was convicted. *Id.* The appellate court

found that the admission of the hearsay statements was improper because Lang was not unavailable at trial. *Id.*, p 274. However, Lang died before the appeal and thus, the court looked to determine if the hearsay evidence offered the requisite "indicia of reliability" such that its admission might have been harmless. *Id.* The court found that, "with the possible exception of those statements she made to her neighbor before being removed from her home," the statements did not have the necessary trustworthiness. *Id.*

> Lang's statements do not offer the "particularized guarantees of trustworthiness". . . . Lang suffered from memory loss before her attack, and her condition worsened after. Each witness offered by the prosecution admitted that Lang was not always coherent and thus not always reliable. Her neighbor, Mrs. Mildred Feezor, admitted that she was coherent sometimes and incoherent at other times even before her attack. . . . The emergency room nurse, Mrs. Green, stated that although Lang alleged somebody stole her money, Lang did not remember what happened. . . . The two police officers summoned to Lang's house heard different accounts about the robbery, and Officer Ormes was unsure whether Lang accused "a black man" or Mrs. Feezor's husband as the assailant. . . . Officer Bruce maintained that Lang stated specifically that her assailant was "a black man who worked at the [Baptist] hospital." . . . Officer Bruce also testified that Lang had $80 stolen, not $20, as Officer Ormes testified. . . . Detective Josyln testified that "[a] lot of things that she told me were obviously nonsense." . . . Lang's son-in-law, Mr. David Record, testified that "she's better at some times than others." . . . He also testified that "I'm sure it's well known that she told some stories that were fantasizing perhaps. I have no problem picking out the real from the fantasy, [but] someone else might." In sum, Kentucky has not demonstrated why Lang's statements should be considered "reliable," particularly given the strictures imposed by *Wright* [*supra*] with regard

to inherent "particularized guarantees of trustworthiness."
[*Sherley, supra,* pp 274-275.]

In a nutshell, the federal cases require (1) a show-
ing of unavailability and (2) that the statements
sought to be admitted bear an adequate "indicia of
reliability." *Wright, supra,* p 814. When determining
whether a statement has adequate "indicia of reliabil-
ity," the totality of the circumstances surrounding the
making of the statement must be considered. *Id.,*
p 819. Factors to be considered include (1) the spon-
taneity of the statements, *Barrett, supra,* p 1300; (2)
the consistency of the statements, *id.; Sherley, supra;*
(3) lack of motive to fabricate or lack of bias, *Barrett,
supra,* p 1300; *Trenkler, supra,* p 58; *Accetturo,
supra,* p 635; (4) the reason the declarant cannot tes-
tify, *Barrett, supra,* p 1300; (5) the voluntariness of
the statements, i.e., whether they were made in
response to leading questions or made under undue
influence, *Accetturo, supra,* p 635; *Colon-Miranda,
supra;* (6) personal knowledge of the declarant about
the matter on which he spoke, *Trenkler, supra,* p 53;
*Accetturo, supra,* p 635; *Colon-Miranda, supra;
Welch, supra,* pp 465-466; (7) to whom the statements
were made, e.g., a police officer who was likely to
investigate further, *Accetturo, supra,* p 635; and (8)
the time frame within which the statements were
made, *Colon-Miranda, supra; Welch, supra,* pp 465-
466. The court may not consider whether evidence
produced at trial corroborates the statement. *Lilly,
supra,* p 138. We find this reasoning instructive and
persuasive.

Our review of the record in this case leads us to
conclude that the trial court did not abuse its discre-
tion when it allowed Johnson, Bolden, and Williams

to testify about statements made by the victim to identify defendant. The criteria of MRE 803(24) were met. First, the victim's statements were clearly offered as evidence of a material fact. MRE 803(24)(A). Second, the statements were more probative on the point for which they were offered than any other evidence the prosecutor could procure through reasonable efforts. MRE 803(24)(B). The reason for this is simple. The victim was the only person who could identify defendant as his assailant. Given that the victim was deceased, no reasonable effort could have procured similar evidence. Finally, the general purposes of the hearsay exceptions are served by admission of the statements into evidence. MRE 803(24)(C).

The victim was clearly unavailable because he was dead. In addition, his statements to Johnson, Bolden, and Williams had a particularized trustworthiness, given the context in which they were made. There was no evidence whatsoever that the victim suffered from memory loss before the incident or that he was incoherent when he made the statements. Cf. *Sherley, supra*. There was no evidence that the victim was ever confused about what had happened to him or that he gave nonsensical information or answers to questions involving the incident. *Id.* Even after the victim was in the hospital for a few days and his cognitive functioning declined, he was still oriented to person and place and knew what had happened to him. The victim *consistently* maintained at all times that the "yard boy" committed the crime. And there was no evidence to indicate that the yard boy was anybody but defendant. Additionally, the statements were *voluntarily* made and were *not the product of*

*any pressure or undue influence* from the police or others. More importantly, the statements were based on the declarant's *personal knowledge.* The victim had ample opportunity to observe his attacker and he personally knew his attacker. Cf. *Welch, supra,* pp 464-468, where it was unclear whether the declarant's statement was based on personal knowledge.

There was also *no* showing that the victim had a *motive to fabricate* the identity of his attacker or had any bias against defendant. The statements the victim made, which identified the attacker, were not self-serving. There is nothing in the record to suggest that the victim had an incentive to accuse defendant. Defendant's argument in this regard is disingenuous. The fact that several years earlier defendant took the victim's truck and did not bring it back in a timely fashion does not demonstrate a motive to fabricate, especially since the record supports that, after that time, defendant and the victim maintained a working relationship. There was no evidence of trouble between the victim and the defendant until shortly before the assault and robbery. Moreover, the fact that the defendant and the victim argued about $25 does not explain or provide a motive for the victim to lie that defendant was his attacker. Rather, the argument over the money was the impetus for the crime itself and this supports a conclusion that the identification was not fabricated.

It is also noted that, when deciding that the statements made to Johnson had the requisite "indicia of reliability," the trial court emphasized the fact that the victim was fading in and out of sleep when Johnson first spoke to him. The trial court found that this demonstrated trustworthiness because the victim did

not have a mind to fabricate when he was fading in and out of sleep. This does not, as defendant argues, show that the victim did not know what he was talking about. On the contrary, when the victim was found, coherent and in distress, he identified defendant as the robber. When he was fading in and out of sleep, he maintained that identification. The consistency and lucidity of the identification demonstrates its trustworthiness. In *Pau v Yosemite Park & Curry Co*, 928 F2d 880, 890 (CA 9, 1991), the decedent's statement was made during a brief recovery from a coma. The Court noted that this fact "suggest[ed] that her statement was not the result of considered self interest." *Id.*

Finally, it does not appear that cross-examination would have had any utility had the victim been available. The victim never wavered about the identification of his assailant. In addition, there was no expectation that if he testified, his testimony would have varied from his prior identification. Moreover, the evidence showed that the victim suffered a cognitive decline after being in the hospital for several days after the attack. Trial was more than six months after the incident. Any deficiencies suffered by the victim, which would have been shown on cross-examination, would not be relevant to the victim's ability to identify defendant near the time of the crime.

Under the circumstances, we find that there was sufficient indicia of reliability to admit the statements and that the trial court did not abuse its discretion when it admitted the victim's statements to Johnson, Bolden, and Williams under MRE 803(24).

We also find defendant's argument concerning the photographic lineup unavailing. Defendant was not

entitled to counsel at the precustody lineup, and thus there was no plain error in this case.

In *People v McKenzie*, 205 Mich App 466, 471-472; 517 NW2d 791 (1994), citing *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), cert den 510 US 1058; 114 S Ct 725; 126 L Ed 2d 689 (1994), this Court clarified that a defendant is generally not entitled to counsel at a precustodial photographic lineup. A defendant is entitled to "counsel at a precustodial investigatory photographic lineup" only when the "circumstances underlying the investigation and the lineup are 'unusual.'" *Id.*, 472. This Court has indicated what it considers "unusual circumstances":

> Although the Michigan Supreme Court did not elaborate or clearly explain the unusual circumstances under which a defendant would be entitled to counsel, this Court believes it would have to be similar to the circumstances in [*People v*] *Cotton* [38 Mich App 763; 197 NW2d 90 (1972)] or where the witness has previously made a positive identification and the clear intent of the lineup is to build a case against the defendant. [*McKenzie, supra*, p 472.]

In this case, there were no unusual circumstances. Defendant was not in custody, was not questioned, and had not been contacted before the lineup. It appears that the purpose of the lineup was to elicit positive identification from the victim that defendant was the "yard boy" and perpetrator. It was necessary for the police to have the victim connect the nickname "yard boy" to defendant. There is no evidence that the photographic lineup was conducted in an effort to build a case against defendant or to bolster the case against defendant as opposed to simply confirming who defendant was. Defendant's claim that Bolden and Williams had previously, positively identi-

fied him as the "yard boy" is misleading. Neither one of them ever identified defendant by name. Defendant's name was garnered through the police work of one of the investigating officers, who went to the address where Bolden thought the "yard boy" lived. The subsequent photographic identification tied all the information together. We find no error.

Defendant next argues that the trial court erred so as to require reversal in failing to give cautionary instructions on identification and that trial counsel was ineffective for failing to ensure that the jury was properly instructed. We disagree.

First, the issue with regard to the jury instructions is not preserved. Defendant agreed to the instructions as given, specifically waived an instruction with regard to the theory of his case, and failed to ask for CJI2d 7.8 or otherwise object to the instructions as given. *People v Taylor*, 159 Mich App 468, 488; 406 NW2d 859 (1987). In addition, because defendant did not request a *Ginther* hearing, this Court's review of defendant's claim of ineffective assistance is limited to errors apparent on the record. *People v Williams*, 223 Mich App 409, 414; 566 NW2d 649 (1997).

There is no error requiring reversal in this case. The instructions that were given accurately informed the jury about how to view and consider the testimony that was given, and also accurately reflected the burden of proof and elements of the crime.

The instructions as given did not remove a not guilty verdict from the jury's consideration, did not rule as a matter of law on any element of the offense, did not misrepresent any information, and did not misdefine any defense. The instructions also did not omit a basic and controlling issue in the case. The

jury was aware that defendant challenged the victim's identification. Defendant gave his closing argument shortly before the instructions and his argument emphasized the identification issue. The jury was subsequently instructed that the prosecution had to prove beyond a reasonable doubt that defendant committed the crime and meant to do so. It was instructed about how to consider the evidence from trial in making its decision. Thus, it appears that the jury was instructed on the applicable law, and the case was fully and fairly presented to it. MCL 768.29; MSA 28.1052.

In *People v Roberson*, 90 Mich App 196, 203; 282 NW2d 280 (1979), this Court stated:

> Defendant next contends that the trial judge erred in failing to instruct the jury on the issue of identification. The trial transcript indicates that the jury was instructed that they must determine beyond a reasonable doubt that defendant was the person who committed the charged offense. No request for further instructions on this subject was made by defense counsel. Under these circumstances, no error occurred. [Citation omitted.]

There has been no showing of plain error or manifest injustice. Therefore, the trial court's failure to instruct the jury using CJI2d 7.8 was not error requiring reversal.

Similarly, trial counsel's failure to request CJI2d 7.8 or another instruction on the identification evidence did not constitute ineffective assistance of counsel. In order to establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of

the proceeding would have been different. *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994),cert den sub nom *Michigan v Caruso*, 513 US 1121; 115 S Ct 923; 130 L Ed 2d 802 (1995). A defendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial. *People v Pickens*, 446 Mich 298, 303: 521 NW2d 797 (1994).

Defendant makes no effort to show that "but for defense counsel's errors," there was a reasonable probability that the outcome of the proceeding would have been different. *Stanaway, supra,* pp 687-688. Moreover, the record does not support defendant's claim that a further instruction on the issue of identity would have, with reasonable probability, changed the outcome of the proceeding. The instructions as given were adequate. Defendant was not deprived of a defense, and the jury was not only aware that identification was an issue but also was informed that the prosecutor had to prove beyond a reasonable doubt that defendant was the perpetrator. The jury clearly rejected defendant's claim that the victim's identification was not reliable. Further instruction on the issue of identification evidence would not have changed the verdict. Thus, defendant's claim of ineffective assistance fails.

We also reject defendant's argument that trial counsel was ineffective at the sentencing proceeding. At the sentencing hearing, trial counsel challenged several portions of the presentence investigation report (PSIR). He wanted references from the Muskegon Heights Police Department records omitted from the PSIR He also challenged the PSIR where it represented that $2,000 was taken from the victim. In doing so,

counsel indicated that there was no testimony from either the trial or the preliminary examination that would support that figure. Trial counsel then asked the trial court to delete from the PSIR references to the victim's death. He did not want the court to link the assault on the victim to the victim's death when sentencing defendant. After making his challenges, trial counsel stated:

> By way of allocution, I have advised my client that in my opinion since this matter is definitely going up on appeal, that I respect the jury's verdict, as I do as an attorney, for a variety of reasons that SATO [sic] or an appellate lawyer should look at, I believe allocution would be inappropriate as this case will be appealed.

The trial court refused to grant restitution after hearing counsel's argument that the $2,000 figure was not supported by the record. It also indicated that it would not consider the victim's "death for purposes of sentencing here today." The trial court would not, however, strike comments from the police reports. A discussion thereafter occurred about defendant's prior convictions from other states. During the discussion, it was evident that defense counsel had reviewed case law with regard to the issue. Defendant, a two-time felony offender, was not sentenced as an habitual offender.

It is apparent from a review of the sentencing transcript that trial counsel was prepared for sentencing and successfully represented defendant on several issues, including restitution. Defendant fails to make any attempt to show that the outcome of the sentencing proceeding would have been different if counsel had allocuted on his behalf. *Stanaway, supra,* pp 687-688. Defendant does not proffer one mitigating factor

or circumstance that his counsel should have brought to the trial court's attention and that would have changed the sentence.

In addition, defendant has not overcome the presumption that his counsel's decision was sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Finally, defendant argues that the court did not consider all applicable factors and standards in sentencing him, and that his sentence is disproportionate. Again, we disagree.

It is obvious that the trial court had complete information, reviewed the PSIR, and considered the necessary sentencing factors. Its remarks demonstrate that it considered the specific facts of defendant's case. It clearly satisfied the articulation requirement and did not need to articulate all the factors or goals of sentencing.

Defendant's argument that his sentence was disproportionate must also fail. Defendant's sentence was within the applicable sentencing guidelines. Therefore, it is "presumptively neither severe nor unfairly disparate." *People v St John*, 230 Mich App 644, 650; 585 NW2d 849 (1998), citing *People v Broden*, 428 Mich 343, 354-355; 408 NW2d 789 (1987). In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate. *People v Hogan*, 225 Mich App 431, 437; 571 NW2d 737 (1997). Defendant here offers no unusual circumstances that would render his presumptively proportionate sentence disproportionate. He simply argues that his crime should

not be considered the "most serious conduct on the continuum of criminal behavior" and that the trial court elevated defendant's participation to the highest level of culpability. This argument is disingenuous.

Defendant had an extensive history with the criminal justice system, including many assaultive crimes. In this case, he beat and robbed an eighty-one-year-old man who had given him work and paid him. Defendant cut the telephone lines in the victim's house so that the victim could not call for help after the attack, and defendant left the victim locked inside his house where help could not easily reach him. Defendant caused the victim to suffer a closed-head injury. In addition, defendant strategized that he would defend the case by claiming that the victim was not in his right mind and thus could not identify him as the perpetrator. His sentence, which was within the guidelines, was proportionate to the circumstances surrounding the offense and the offender.

Affirmed.