# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMON NIQUAN LEE HAMPTON,

        Defendant-Appellant.

UNPUBLISHED
November 15, 2016

No. 329114
Ingham Circuit Court
LC No. 14-000464-FC

Before: BOONSTRA, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant was convicted by a jury of second-degree murder, MCL 750.317; assault with intent to commit murder, MCL 750.83; carrying a dangerous weapon with unlawful intent, MCL 750.226; and possession of a firearm during the commission of a felony ("felony firearm"), MCL 750.227b(1). He was sentenced to prison for 400 to 880 months for second-degree murder; 225 to 880 months for assault with intent to commit murder; 22 to 60 months for carrying a dangerous weapon with unlawful intent; and two years for felony firearm. On appeal, defendant argues that the prosecutor made improper comments during his closing argument, necessitating a new trial, and that he is entitled to resentencing because the sentences for his murder and assault convictions were unreasonable. We affirm.

## I. FACTS

On June 25, 2013, shortly before midnight, defendant and his brother, Valentino Stewart, rode with a friend, Mark Williams, to a residential area near the intersection of Pine and Lapeer Streets in Lansing. Based on the conversation between the brothers, Williams understood that the brothers were planning to confront someone who earlier had attacked Stewart. Stewart was carrying a handgun, and Williams offered to let defendant use his AR-15 rifle that was stored in the trunk of his car.

When they arrived at their destination, Williams saw two people on the sidewalk. Stewart stated, "That's him," and Williams parked the car. The brothers ran from Williams' vehicle, with defendant carrying the AR-15. Moments later, defendant returned to the car and asked Williams if the AR-15 had a safety that was disabling the gun; Williams replied that it did

and reached through the window and took the safety off. Defendant again ran from the vehicle, and about five seconds later, Williams heard his AR-15 being fired rapidly about twenty to twenty-five times.[1] Michelle Waters and her fiancé, Anthony Kye, who had no connection to the brothers or the people whom the brothers were seeking, were talking and smoking outside their residence on Pine Street. Kye was killed after being struck by several bullets. Defendant was convicted after a jury trial of second-degree murder in connection with Kye's death, along with assault with intent to commit murder, carrying a dangerous weapon with unlawful intent, and felony firearm.

## II. PROSECUTORIAL ERROR

Defendant first argues that he was denied a fair trial when the prosecutor improperly bolstered the credibility of Williams, who testified against defendant and Stewart, when he made the following statements during closing argument:

> [Williams] essentially came forward on his own, came back from Mississippi and confessed to a crime. He implicated himself in that crime, and in doing so, he came back and accepted responsibility to the point where he could be incarcerated for the next 45 years. Ask yourself whether or not he had to do that, because based on the evidence and testimony you've heard, we know that after he had come back and essentially confessed, implicated himself in this particular case as the detective said on July 23rd, implicated himself to the point that he could be charged with murder, he was then free in Mississippi for the next three months. He was free to run, to hide, to leave the area and never be seen again. . . . He didn't run. He came back and he told the detectives exactly what happened.
>
> I ask that whenever you consider whether or not Mark Williams is telling you the truth, think about that one fact and think about the enormity of the sentence that he took; 45 years. Now, yes, he could get out in 15, but he's already told you that the time he's spent in [prison] . . . is a time he will spend being labeled as a snitch, someone who has come forward and testified, and . . . from what we know from the other witnesses, doing something like that puts his life at risk every day in [prison].

Defendant argues that these comments improperly vouched for Williams' credibility. We disagree, and conclude that the prosecutor's comments were not improper.

We first note that defendant did not object to these statements by the prosecutor during the prosecutor's closing arguments at trial. Where issues of prosecutorial misconduct are preserved, we review them de novo, but where, as here, the defendant fails to object to the prosecutor's statements, we review the unpreserved claim of error for plain error affecting the

---

[1] Williams testified that the AR-15 requires the shooter to depress the trigger each time a round is fired.

defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004).

A prosecutor may not vouch for the credibility of a witness by claiming that he or she has special knowledge concerning a witness' truthfulness. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Prosecutors, however, have great latitude in their arguments, and may comment on the credibility of a witness or argue from the evidence that a particular witness is worthy or not worthy of belief. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546, (2007). Here, the prosecutor properly argued from the evidence that Williams was a credible witness because he implicated himself in the offense and did not attempt to escape from possible charges while he was free in Mississippi. The comments did not suggest that the prosecutor had special knowledge as to Williams' truthfulness, but only that the circumstance suggested that Williams was worthy of belief.

Defendant also argues that the prosecutor improperly appealed to the jury's sympathy by mentioning the victim's family. During his closing argument, the prosecutor stated that the victim's family was sitting "there in that front row," and that they had "waited and they continue to wait patiently for justice." According to defendant, these comments suggested that it was the jury's civic duty to find defendant guilty in order to provide closure to the victim's family. Again, defendant failed to preserve this issue by objecting before the trial court. In any event, we disagree that the prosecutor's comments were improper.

The prosecutor is not permitted to appeal to the jury to sympathize with the victim. *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). We examine the entire record and evaluate a prosecutor's remarks in context to determine whether the remarks constitute an improper appeal to the jury to sympathize with the victim. *Dobek*, 274 Mich App at 64. In *Watson*, we held that the prosecutor's comments were not an improper appeal to the jury for sympathy where the comment was isolated, was not a blatant appeal for sympathy, and was not so inflammatory as to prejudice the defendant where the prosecutor stated that the victim was treated "in a way that no animal should be treated." *Watson*, 245 Mich App at 591-592.

Here, the prosecutor's comment about the victim's family was not a blatant appeal to the jury's sympathy nor was it inflammatory, and it was the only reference to the victim's family made by the prosecutor. A review of the record indicates that the prosecutor also asked the jurors to be "fair and just" as they had sworn to do when taking the oath to serve on the jury, and to consider all of the evidence and to "keep an open mind." Considered in context, these comments were not improper. See *Watson*, 245 Mich App at 591-592. Additionally, the trial court instructed the jurors not to let their decision be influenced by sympathy, and that the comments of the attorneys were not evidence. The jury is presumed to follow the court's instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Defendant is not entitled to relief based on prosecutorial error.

## III. RESENTENCING AND PROPORTIONALITY

Defendant also contends that his sentences for second-degree murder and assault with intent to murder were disproportionate. Defendant concedes that the sentences fell within their respective sentencing guidelines ranges, and defendant does not challenge the scoring of the

guidelines. Defendant contends, however, that his sentences were nonetheless unreasonable based on his lack of an extensive criminal record and various life circumstances. We disagree.

This Court reviews de novo questions regarding the interpretation and application of sentencing guidelines. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). The question of whether a sentence is proportionate is reviewed for an abuse of discretion. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011).

Defendant contends that his sentence should be reviewed for reasonableness pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id.*, 498 Mich at 392. Here, defendant agrees that his sentences do not depart from the minimum guidelines range. Because defendant's minimum sentences do not depart from the guidelines, MCL 769.34(10) requires us to affirm his sentences. MCL 769.34(10) states, in relevant part:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.

This provision remains valid after *Lockridge*. In *People v Schrauben*, 314 Mich App 181, 196 n 1; ___ NW2d ___ (2016); this Court explained that "*Lockridge* did not alter or diminish MCL 769.34(10)." This Court stated:

> When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information. MCL 769.34(10). Defendant does not dispute that his sentence was within the recommended minimum guidelines range, and he does not argue that the trial court relied on inaccurate information or that there was an error in scoring the guidelines. Therefore, this Court must affirm the sentence. [*Schrauben*, 314 Mich App at 196.]

Accordingly, pursuant to MCL 769.34(10) we must affirm defendant's sentences. For that same reason, we reject defendant's argument that he is entitled to resentencing because the trial court imposed the sentences under the belief that a sentence within the appropriate sentencing guidelines range was mandatory, prior to our Supreme Court's decision in *Lockridge*. Where the minimum sentence is within the guidelines and the information and scoring relied upon by the trial court was accurate, we are directed by MCL 769.34(10) to affirm.

Further, even if review of defendant's sentences for proportionality were warranted, defendant has failed to demonstrate that his sentences were disproportionate. As discussed, defendant's minimum sentences fell within the guidelines range, and are thus presumptively proportionate. See *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000). But see *Armisted*, 295 Mich App

at 51-52 (stating that it does not appear that the "unusual circumstances" basis for overcoming the presumption of proportionality survived the enactment of the statutory sentencing guidelines.)

Even if the "unusual circumstances" rule remains intact, defendant in this case has failed to present unusual circumstances that would overcome the presumption that his sentences were proportionate. Defendant identifies nothing about the circumstances of the offense that would make this case unusual. Defendant notes that at the time of the offense he had successfully completed probation for juvenile convictions, was single, unemployed, and had a tenth-grade education. These facts alone do not rise to the level of unusual circumstances sufficient to make defendant's presumptively proportionate sentences disproportionate. See *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994).

Defendant also argues that his minimum sentences for second-degree murder and assault with intent to murder were unreasonable because they served as "mere punishment" and did not take into account other factors like the protection of society, deterrence, or defendant's potential for reformation, to improve his educational level, or to obtain marketable skills for when he would be released. This argument is not supported by the record. At sentencing, the court ordered defendant to "complete his education" while incarcerated and also ordered that he receive mental health treatment. Moreover, given that punishment is the essence of a prison commitment, we cannot say that sending a convicted felon to prison for purposes of punishment renders a sentence invalid.

Affirmed.

/s/ Mark T. Boonstra
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola