*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
October 1, 2019

v

DEONTE KINWAN MCCOY,

Defendant-Appellant.

No. 342015
Lapeer Circuit Court
LC No. 16-012682-FC

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

Defendant, Deonte Kinwan McCoy, appeals as of right his convictions and sentences, following a jury trial, of two counts of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 25 to 40 years for each assault with intent to commit murder conviction, 5 to 25 years for the felon-in-possession conviction, and 2 to 15 years for the possession of cocaine conviction, to be served concurrently, but consecutive to concurrent two-year terms of imprisonment for the felony-firearm convictions. We affirm.

Defendant's convictions arise from a shooting incident on the night of July 1-2, 2016, in Lapeer County. Earlier that day, defendant went to the home of John Bucy, whom defendant had known for several years, to collect money for cocaine that defendant had previously sold to Bucy and a coworker. When defendant discovered that Bucy's coworker was not present to pay his share of the debt, he became upset and produced a .38 caliber pistol. Bucy and Brent Kozar, who was also present, eventually gave defendant the money he was owed. Defendant calmed down and apologized for his behavior. The group decided to go to Kozar's house to socialize and light fireworks, but Kozar insisted that defendant take his gun to his grandmother's house and leave it there because there would be children at Kozar's house. Kozar drove defendant to Flint to drop off his gun. On the way to Kozar's house, they picked up defendant's father, and then Kozar and defendant consumed beer and cocaine while with defendant's father.

-1-

While at Kozar's house, defendant and Lori Strength went to an upstairs bedroom, at which time Strength saw a small handgun fall out of defendant's shorts. Later that night, defendant, Bucy, Kozar, and defendant's father all consumed cocaine supplied by defendant in the master bedroom. At one point, Bucy left to use the bathroom. As Bucy was exiting the bathroom, defendant called out Bucy's name and fired a gun at him. Bucy was shot in the chest and shoulder. Defendant also fired two shots at Kozar, but Kozar ducked and ran, and the shots narrowly missed his head. Defendant and his father then ran out of the bedroom and left the house. The police arrested defendant shortly thereafter; he was soaking wet and had emerged from a nearby ditch. Defendant was not armed with a weapon and the police never recovered the firearm used in the shooting. When defendant was searched at the police station, the police discovered a baggie that contained a substance that tested positive for cocaine. At trial, the defense attacked the credibility of the witnesses and the adequacy of the police investigation.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present sufficient evidence to support any of his convictions. We disagree. We review a challenge to the sufficiency of evidence de novo by viewing the evidence in a light most favorable to the prosecution to determine if the evidence was sufficient to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). Circumstantial evidence and any reasonable inferences drawn from the evidence may be sufficient to prove the elements of a crime. *People v Abraham,* 234 Mich App 640, 656; 599 NW2d 736 (1999). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses[,]" *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005), and all conflicts in the evidence must be resolved in the prosecution's favor, *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

Defendant first argues that the evidence was insufficient to support his convictions of assault with intent to commit murder with respect to Bucy and Kozar, as well as the corresponding felony-firearm convictions. The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would have made the killing murder. *People v Barclay*, 208 Mich App 670, 674; 528 NW2d 842 (1995). An intent to kill may be inferred from any facts in evidence. *Id*. A conviction of felony-firearm requires proof that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony. *People v Avant,* 235 Mich App 499, 505; 597 NW2d 864 (1999).

Bucy and Kozar both testified that defendant shot at them with a firearm. Although defendant argues that Bucy's and Kozar's testimony was not credible because of inconsistencies between their accounts, the credibility of their testimony was an issue for the jury to resolve. See *People v Lemmon*, 456 Mich 625, 646-647; 576 NW2d 129 (1998); *People v Naugle*, 152 Mich App 227, 235-236; 393 NW2d 592 (1986). We must resolve all conflicts in the evidence in favor of the prosecution. *Wolfe*, 440 Mich at 515. Bucy and Kozar testified that defendant first shot at Bucy after calling out his name, wounding Bucy twice. Defendant then fired at Kozar, who was able to duck to avoid being hit. Bucy was shot in the chest area and shoulder, and the shots fired at Kozar just missed striking his head. Defendant's use of a firearm and the location of the shots were sufficient to enable the jury to reasonably infer that defendant intended to kill

both men, not just cause great bodily harm. Defendant's claims that the police failed to properly investigate the shooting were matters for the jury to consider as part of its evaluation of the weight of the evidence and the credibility of the victims' accounts. The evidence was sufficient to support defendant's convictions of two counts of assault with intent to commit murder.

Although a firearm was never recovered, given the witness accounts of the shooting, the evidence that Bucy suffered two gunshot wounds, and the witnesses' identification of defendant as the shooter, as well as the testimony of multiple other witnesses who said they saw defendant possess a handgun that night at Kozar's house, the evidence was also sufficient to enable the jury to convict defendant of both counts of felony-firearm.

Sufficient evidence also supports defendant's conviction of possession of less than 25 grams of cocaine. The prosecution argued at trial that the drug charge was supported by evidence that defendant supplied the cocaine found in Kozar's bedroom and evidence that cocaine was found in defendant's pocket when he was searched at the police station after his arrest. To prove this charge, the prosecutor was required to establish that (1) defendant possessed a controlled substance, (2) the substance that defendant possessed was cocaine, (3) defendant knew he possessed cocaine, and (4) the substance weighed less than 25 grams. MCL 333.7403(2)(a)(*v*). Possession of a controlled substance can be constructive or joint. *Wolfe*, 440 Mich at 519-520. Constructive possession occurs "when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id*. at 521. A defendant does not have to be the owner of the controlled substance to be found in possession of it, but "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *Id*. at 520. "[S]ome additional connection between the defendant and the contraband must be shown." *Id*.

The physical evidence found in the bedroom at Kozar's house included cocaine left on the dresser. The testimony indicated that defendant supplied the cocaine to Bucy and Kozar. That evidence, coupled with the evidence that the police recovered cocaine from defendant during a search at the jail after he was arrested, was sufficient to prove that defendant possessed less than 25 grams of cocaine. Although defendant argued that the cocaine found at the jail was planted on him, the weight and veracity of that argument was for the jury to resolve. We also reject defendant's argument that Deputy Eckel failed to identify him as the person who had the cocaine at the jail. During her testimony about the patdown search, Deputy Eckel prefaced her testimony by confirming that "a suspect" came into the jail "by the name of Deonte McCoy." Even though she did not specifically identify defendant at trial, her testimony was sufficient to enable the jury to find that defendant was the person she searched at the jail that day, and that the cocaine she discovered came from defendant. Thus, there was sufficient evidence to convict defendant of possession of less than 25 grams of cocaine.

Defendant argues that the evidence was insufficient to prove his status as a convicted felon to support his conviction of felon in possession of a firearm. We disagree. To support the felon-in-possession charge, the prosecution introduced a certified copy of defendant's conviction from Genesee County for delivery of less than 50 grams of a controlled substance. Although defendant asserts that the evidence failed to show that he was actually the person named in that document, defendant merely speculates that the record might have contained an inaccurate name or involved a different person with the same name. That was an argument to be made to the jury.

-3-

We must view the evidence in a light most favorable to the prosecution. Viewed in this manner, the record evidence of defendant's prior conviction was sufficient to prove his status as a convicted felon. Accordingly, the evidence was sufficient to support defendant's conviction of felon in possession of a firearm.

## II. VENUE

Next, defendant argues that the trial court erred by denying his motion for a change of venue. "A motion for change of venue is addressed to the discretion of the trial judge." *People v Jendrzejewski*, 455 Mich 495, 500; 566 NW2d 530 (1997). The trial court's decision will not be disturbed on appeal "unless there clearly appears [to be] a palpable abuse of discretion." *Id.*, quoting *People v Swift*, 172 Mich 473, 480; 138 NW 662 (1912).

Defendant argued below that a change of venue was necessary because of pretrial publicity about this case in the local newspapers. Defendants generally must be tried in the county or city where the crime was committed. *People v McBurrows*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 157200); slip op at 3. Exceptions to this rule exist if "good cause is shown by either party." *Jendrzejewski*, 455 Mich at 499-500; MCL 762.7. Good cause to change venue may exist where a case receives pretrial publicity. As explained in *People v Unger*, 278 Mich App 210, 254; 749 NW2d 272 (2008):

> "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v Dowd*, 366 US 717, 722; 81 S Ct 1639; 6 L Ed 2d 751 (1961). Therefore, it may be appropriate to change the venue of a criminal trial when widespread media coverage and community interest have led to actual prejudice against the defendant. "Community prejudice amounting to actual bias has been found where there was extensive highly inflammatory pretrial publicity that saturated the community to such an extent that the entire jury pool was tainted, and, much more infrequently, community bias has been implied from a high percentage of the venire who admit to a disqualifying prejudice." *Jendrzejewski, supra* at 500-501. Changes of venue might be required in cases involving "extensive egregious media reporting," "a barrage of inflammatory publicity leading to a 'pattern of deep and bitter prejudice' against the defendant," and "a carnival-like atmosphere surrounding the proceedings." *Id.* at 506-507 (citations omitted). Changes of venue might also be required in cases involving "highly inflammatory attention to sensational details . . . ." *Id.* at 508.

During voir dire, the trial court inquired about the venire's exposure to pretrial publicity about this case in the "*County Press*," the "*Tri-City Times*," or "anything else." One juror told the court that she had read something about the case the day before, including the charges, but she did not form an opinion after reading the article. That juror added that she only learned from the article that "they were picking the jury for today." She assured the court that she understood that a media report about the case could involve misstatements and that she could base any decision only on what she heard in court. Another juror advised the court that on the previous Sunday (two days earlier), she read "that this case may go to trial" that week. Nothing the juror read caused her to form an opinion about the matter. Two other jurors also read articles in the

Sunday paper about this case going to trial. Both jurors also confirmed that they could be fair and impartial. None of these jurors were challenged for cause. When additional jurors were questioned, some were specifically asked if they had read any publicity about this case and there were no affirmative responses.

Defendant has demonstrated, at most, that this case generated some publicity in the local press, but the record does not show that the publicity surrounding the case created or reflected community bias against defendant. There is nothing to suggest that the media reporting exposed the venire to extensive, sensational, or prejudicial information. The few jurors who recalled reading about the case in the newspaper assured the court that they were able to set aside that information and decide the case on the basis of the evidence introduced at trial. On this record, the trial court did not abuse its discretion by denying defendant's motion to change venue.

## III. COMPOSITION OF THE JURY

Defendant, who is African-American, also argues that the trial court erred by denying his motion challenging the racial composition of the jury venire, given that there were no African-Americans in his jury venire. "Questions of systematic exclusion of minorities from venires are reviewed de novo by this Court." *People v Williams*, 241 Mich App 519, 525; 616 NW2d 710 (2000) (quotation marks and citation omitted).

Defendants are entitled to an impartial jury drawn from a fair cross-section of the community, US Const, Am VI, but that does not require that a jury exactly mirror the particular community. *People v Howard*, 226 Mich App 528, 532-533; 575 NW2d 16 (1997). "To establish a prima facie violation of the fair cross-section requirement, a defendant must show that a distinctive group was underrepresented in his venire or jury pool, and that the underrepresentation was the result of systematic exclusion of the group from the jury selection process." *People v Smith*, 463 Mich 199, 203; 615 NW2d 1 (2000).

Defendant, as an African-American, is a member of a distinctive group, and the record discloses that there were no African-Americans in defendant's jury venire. However, to establish a prima facie violation of the fair cross-section requirement, defendant was required to offer evidence of jury venires in general in Lapeer County and evidence showing that any underrepresentation of African-Americans was due to systematic exclusion. In *Williams*, 241 Mich App at 526-527, this Court stated:

> Defendant satisfies the first prong of the *Duren/Hubbard* test.[1] "African-Americans are considered a constitutionally cognizable group for Sixth Amendment fair-cross-section purposes." *Hubbard, supra* at 473. However, neither the second nor third prong is satisfied. "[T]he second prong is satisfied

---

[1] *Duren v Missouri*, 439 US 357; 99 S Ct 664; 58 L Ed 2d 579 (1979); *People v Hubbard*, 217 Mich App 459; 552 NW2d 493 (1996), overruled in part on other grounds by *People v Bryant*, 491 Mich 575, 617-618; 822 NW2d 124 (2012), and *People v Harris*, 495 Mich 120, 123; 845 NW2d 477 (2014).

where it has been shown that a distinctive group is substantially underrepresented in the jury pool." *Id*. at 474. However, like the defendant in *People v Howard*, 226 Mich App 528, 533; 575 NW2d 16 (1997), this defendant asserts that African-Americans were underrepresented in his particular array, but presents no evidence on jury venires in general. "Merely showing one case of alleged underrepresentation does not rise to a 'general' underrepresentation that is required for establishing a prima facie case." *Id*.

Even if defendant had satisfied the second prong of the test, he has clearly failed to satisfy the third prong, which requires him to show that any underrepresentation is due to systematic exclusion. *Hubbard, supra* at 481. Defendant simply argues that "this prong will be met if a hearing is held on remand," and points out that "of the 50 prospective jurors, only two were African-American," while "nine percent of Kalamazoo County is African-American." "[I]t is well settled that systematic exclusion cannot be shown by one or two incidents of a particular venire being disproportionate." *People v Flowers*, 222 Mich App 732, 737; 565 NW2d 12 (1997). Furthermore, "[w]hile a criminal defendant is entitled to an impartial jury drawn from a fair cross section of the community, he is not entitled to a petit jury that exactly mirrors the community," and a "bald assertion" that systematic exclusion must have occurred is insufficient to make out a claim of systematic exclusion. *Id*. at 736-737. Defendant has the burden of demonstrating a problem inherent within the selection process that results in systematic exclusion. Defendant has failed to do so. [Footnotes omitted.]

Although the record establishes that there were no other African-Americans in defendant's jury pool, defendant did not offer any evidence of the number of African-Americans in Lapeer County, and he also failed to offer any evidence that any underrepresentation of African-Americans was due to systematic exclusion of minorities in the jury-selection process in Lapeer County. Accordingly, he failed to establish a prime facie violation of the fair cross-section requirement.

IV. DISCOVERY

Defendant argues that his right to due process was violated by the prosecution's failure to produce a pretrial victim-impact statement made by Bucy. "This Court reviews de novo a defendant's claim of a constitutional due-process violation." *Jackson*, 292 Mich App at 590.

A defendant's right to due process under US Const, Am XIV, is violated when the prosecution suppresses material evidence favorable to the defense. *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Fox (After Remand)*, 232 Mich App 541, 549; 591 NW2d 384 (1998). To establish a *Brady* violation, the defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence was material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). The prosecution bears responsibility for evidence within its control, even evidence unknown to it, and even where the nondisclosure was inadvertent and not intentional. *Id*. at 150. In *Chenault*, the Court discussed the element of materiality as follows:

To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." This standard "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . . . ." The question is whether, in the absence of the suppressed evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. [*Id.* at 150-151 (citations omitted).]

Stated another way, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id* at 157.

At sentencing, defendant argued that he was entitled to a new trial because the prosecution never provided a copy of a victim-impact statement written by Bucy shortly after the offense. Defendant learned about the statement because it was reprinted in defendant's presentence investigation report (PSIR). Defendant argued that the statement was material because it could have been used to impeach Bucy's testimony at trial. The prosecutor denied that the statement was withheld and claimed that it was included in a discovery package provided to defense counsel on July 15, 2016. The trial court found that the disputed statement was provided during discovery and denied defendant's request for a new trial.

We are troubled by the trial court's conclusory finding that the disputed statement was provided during discovery. The defense denied that the statement was ever received and the court did not conduct any evidentiary hearing to resolve the issue. The court instead relied on a proof of service that did not specifically identify the disputed statement. However, even assuming that the impact statement was not produced during discovery, defendant is not entitled to relief because he has not demonstrated that the statement was material.

Defendant argues that Bucy's impact statement was material because it contained information that could have been used to impeach Bucy's testimony at trial. He points to Bucy's statement that he was shot in the chest with one of the bullets, which "damaged my stomach and liver along w/a loss of a lot of blood, fractured rib and collapsed lung." Defendant argues that this statement was inconsistent with evidence at trial that no blood was observed in the bedroom or bathroom. However, Bucy did not testify at trial that his blood loss occurred in the bedroom or bathroom, and defendant does not identify any testimony by Bucy at trial regarding his blood loss that was inconsistent with his prior statement. It was undisputed that Bucy received two gunshot wounds, that others in the house swiftly came to his aid, and that one of the house members transported him to the hospital. Furthermore, there was other evidence that Bucy lost blood after the shooting. Strength, who drove Bucy part of the way to the hospital, testified that when Bucy ran downstairs, he was bleeding and screaming that he had been shot. She did not see blood dripping, but saw blood on his shirt and he was holding his finger in the bullet hole so he would not bleed out. After he got out of her car, she saw blood on her car seat. Bucy's impact statement did not specify the timing of the blood loss. The statement is not inconsistent

with other evidence that Bucy lost a significant amount of blood until he received medical care. Furthermore, the amount of Bucy's blood loss was not a critical factor in this case. In sum, there is no reasonable probability that the amount of Bucy's blood loss inside the house after the shooting was material to either Bucy's credibility or any other issue at trial.

Defendant also argues that Bucy's prior statement inaccurately indicated that defendant "was on massive amounts of cocaine + drinking" at the time of the shooting. Although defendant disputes that he had consumed a large amount of drugs or alcohol, witnesses testified that defendant was using cocaine and consuming alcohol earlier that day with Kozar, and that defendant was part of the group who was using cocaine in the master bedroom immediately before the shooting. Considering the other evidence of defendant's cocaine and alcohol use that day, there is no reasonable probability that the outcome of the proceeding would have been different if defendant had been aware that Bucy had described defendant's consumption of cocaine and alcohol that day as "massive."

Defendant also observes that Bucy's impact statement mentioned that defendant reloaded his gun after he fired five shots at Bucy and Kozar. Although defendant emphasizes that Bucy did not mention this at trial, the record discloses that Bucy was never questioned about this subject. Thus, there was no trial testimony that contradicted Bucy's earlier statement about defendant reloading the weapon. Bucy's prior statement could not have been used to impeach Bucy's trial testimony when Bucy did not make an inconsistent statement at trial about whether defendant reloaded the gun.

In sum, even if the disputed evidence was not produced during discovery, defendant is not entitled to relief because he has not demonstrated that Bucy's prior statement was material to his right to a fair trial.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he is entitled to a new trial because he was denied the effective assistance of counsel. Because defendant did not raise his ineffective-assistance claims in the trial court, our review of this issue is limited to errors apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

Defendant first argues that defense counsel was ineffective for not requesting an instruction consistent with M Crim JI 4.5, regarding a jury's consideration of a witness's prior inconsistent statement. During trial, defense counsel introduced a portion of Bucy's preliminary examination testimony in an attempt to show that, contrary to Bucy's trial testimony, Bucy gave testimony at defendant's preliminary examination suggesting that defendant fired the first shots

at Kozar. Bucy disputed the accuracy of that testimony and continued to insist at trial that the first shots were fired at him. Defendant also offered Deputy Eckel's preliminary examination testimony to impeach her trial testimony that when defendant was first brought to the jail, she was not informed that defendant had been searched earlier. The impeachment evidence resulted in Deputy Eckel conceding that one of the road patrol deputies had informed her that defendant was searched previously.

M Crim JI 4.5 provides:

You have heard evidence that, before the trial, [a witness/witnesses] made [a statement/statements] that may be inconsistent with [his/her/their] testimony here in court.

(1) You may consider an inconsistent statement made before the trial [only] to help you decide how believable the [witness'/witnesses'] testimony was when testifying here in court.

(2) If the earlier statement was made under oath, then you may also consider the earlier statement as evidence of the truth of whatever the [witness/witnesses] said in the earlier [statement/statements] when determining the facts of this case.

On appeal, defendant argues that the trial court's failure to give M Crim JI 4.5 prevented the jury from finding "reasonable doubt in the prosecution's case based on their assessment of the credibility of the witnesses." He contends that "[t]he jury very likely could have found that the prosecution's witnesses and evidence were not credible, and evaluated the evidence differently." We reject defendant's arguments because M Crim JI 4.5 was not necessary to assist the jury in determining the witnesses' credibility. The purpose of M Crim JI 4.5 is to prevent a jury from considering impeachment evidence as substantive evidence. See *People v Durkee*, 369 Mich 618, 627; 120 NW2d 729 (1963). In this case, however, the prior inconsistent statements involved prior testimony given at a preliminary examination. Because the preliminary examination testimony was given under oath, even if it was inconsistent with the witnesses' trial testimony, the jury could have considered it as substantive evidence, as well as impeachment evidence. MRE 801(d)(1)(A); *People v Chavies*, 234 Mich App 274, 281-282; 593 NW2d 655 (1999), overruled in part on other grounds by *People v Williams*, 475 Mich 245; 716 NW2d 208 (2006). Moreover, the prior testimony was elicited by defense counsel and was offered by the defense to refute the witnesses' trial testimony. Under these circumstances, even if an instruction based on M Crim JI 4.5 would have been appropriate, there is no basis for concluding that defendant was prejudiced by defense counsel's failure to request the instruction. Therefore, this ineffective-assistance claim cannot succeed.

Defendant next argues that defense counsel was ineffective for allowing the prosecutor to support the felon-in-possession charge by introducing evidence that defendant was previously convicted of delivery of less than 50 grams of a controlled substance, instead of merely stipulating that defendant was previously convicted of an unspecified felony. Although such a stipulation would have been appropriate, see *People v Swint*, 225 Mich App 353, 377-379; 572 NW2d 666 (1997), defendant has not overcome the presumption that defense counsel elected not

to enter into such a stipulation as a matter of reasonable trial strategy. In addition to the charge of possession of less than 25 grams of cocaine, defendant was also charged with the more serious crimes of two counts of assault with intent to commit murder. Defense counsel may have believed that by stipulating that defendant had a prior conviction for an unspecified felony, the jury might think that the prior felony was for another violent offense. Considering the more serious assault with intent to commit murder charges defendant was facing, counsel may have reasoned that it would be less damaging if the jury knew that the prior conviction involved another drug offense. The prosecution's exhibit allowed the jury to hear that defendant had a prior drug conviction, but it did not reveal the factual details regarding that offense, so counsel may have believed that the evidence would not be unduly prejudicial. Defendant implies that introduction of his prior conviction for a drug offense was unduly prejudicial because it predisposed the jury to convict him of the drug offenses at issue in the present case. As discussed above, however, the evidence was sufficient to support defendant's drug-related convictions.

For his last ineffective-assistance claim, defendant argues that defense counsel was ineffective for not moving to suppress two statements that defendant made to Detective Eckel. The first statement was made when Deputy Eckel found the packet of white substance while searching defendant at the jail. Upon finding the substance, defendant volunteered to Deputy Eckel that the substance was heroin. Later, after Deputy Eckel gave the packet to Deputy Bowman, they both went back and asked defendant what it was and he said it was "crack." Defendant argues that defense counsel should have moved to suppress these statements on the ground that they were made without the police advising him of his *Miranda*[2] rights.

There is no evidence that defendant's first statement was made in response to any police questioning. Volunteered statements that are not made during custodial interrogation are not subject to the requirements of *Miranda*. *People v White*, 493 Mich 187, 194-195; 828 NW2d 329 (2013). Because defendant appears to have initiated the conversation and there is no indication that defendant's first statement was made in response to police questioning, defendant has not demonstrated that any objection to this statement would have been successful. Counsel is not ineffective for failing to make a futile objection or motion. *People v Darden,* 230 Mich App 597, 605; 585 NW2d 27 (1998).

Regarding defendant's second statement, even if defense counsel could have successfully moved to suppress the statement, defendant has not demonstrated a reasonable probability that the outcome of his trial would have been different. The evidence had no bearing on defendant's guilt or innocence of the assault with intent to commit murder and firearm charges. With respect to the drug charge, the evidence showed that defendant sold drugs, that defendant and Kozar used cocaine before arriving at Kozar's house earlier that evening, that defendant and several others were consuming cocaine supplied by defendant in the master bedroom of Kozar's house shortly before the shooting, and that the substance seized from defendant during the search at the jail tested positive for cocaine. Considering this body of evidence, there is no reasonable

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

probability that the outcome of defendant's trial would have been different if defendant's second statement had not been offered at trial.

## VI. JURY INSTRUCTIONS

Defendant next argues that the trial court erred by instructing the jury on flight, and by not including a "shotgun" as a type of weapon in its instructions defining the terms "dangerous weapon" and "firearm." Jury instruction issues involving questions of law are reviewed de novo, but a trial court's decision whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). A trial court may give an instruction if a rational view of the evidence supports the instruction. *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014).

First, defendant argues that the evidence did not support an instruction on flight. We disagree. The standard jury instruction on flight, M Crim JI 4.4, provides:

> (1) There has been some evidence that the defendant [tried to run away/tried to hide/ran away/hid] after [the alleged crime/(he/she) was accused of the crime/the police arrested (him/her)/the police tried to arrest (him/her)].

> (2) This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt.

> (3) You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind.

The trial court instructed the jury as follows:

> There has been some evidence that the Defendant tried to run away after the alleged crimes. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and if true, whether it shows that the Defendant had a guilty state of mind.

Although defendant emphasizes that he voluntarily surrendered when he encountered the police, witnesses testified that defendant ran from the house after the shooting, and the evidence also indicated that defendant took a route through a swampy area after fleeing from the house. This evidence supports the trial court's decision to instruct the jury on flight. See *Unger*, 278 Mich App at 226 (evidence of flight includes such actions as fleeing the scene of the crime and preparing to flee). The trial court did not abuse its discretion by giving the flight instruction.

Defendant also argues that the trial court erred by not including a shotgun in its instructions defining the terms "dangerous weapon" and "firearm." We again disagree. The trial

-11-

court defined the term "dangerous weapon" in relation to the assault with intent to commit murder charges as follows:

> A dangerous weapon is any object that is used in a way that is likely to cause serious physical injury or death. Some objects, such as guns or bombs, are dangerous because they are specifically designed to be dangerous. Other objects are designed for peaceful purposes but may be used as a dangerous weapon. The way an object is used or intended to be used in an assault determines whether or not it is a dangerous weapon. If an object is used in a way that is likely to cause serious physical injury or death it is a dangerous weapon. *You must decide from all the facts and circumstances whether the evidence shows that the firearm in question here was a was [sic] dangerous weapon.*
>
> A gun/pistol is a firearm. A firearm includes any weapon which is designed to or may readily be converted to expel a projectile by action of an explosive. It does not matter whether the gun/pistol was capable of firing a projectile or whether it was loaded. [Emphasis added.]

The first paragraph of this instruction was modeled after M Crim JI 17.10 (defining a "dangerous weapon"). The last portion of the standard instruction allows the court to insert a reference to the type of weapon at issue in the case:

> (3) You must decide from all of the facts and circumstances whether the evidence shows that the _____ in question here was a dangerous weapon.

Defendant appears to argue that the trial court should have included "shotgun" in the emphasized portion of its instructions. Instead, the court simply used the term "firearm," choosing not to specify what type of firearm may have been used. Although the defense argued that Kozar may have had a shotgun in the house, all of the eyewitnesses testified that defendant was armed with a handgun. There was no evidence that a shotgun was used during the shooting. Because no rational view of the evidence allowed the jury to find that a shotgun was used in the shooting assault of either Bucy or Kozar, the trial court did not err by denying defendant's request to include the term "shotgun" in its instructions.

Similarly, the trial court did not err by declining to include "shotgun" in its instructions defining a "firearm." The court followed the standard instruction, M Crim JI 17.11, which provides, in relevant part:

> (1) A gun [revolver/pistol] is a firearm. A firearm includes any weapon which is designed to or may readily be converted to expel a projectile by action of an explosive.

Once again, the witnesses only described defendant using a handgun, not a shotgun, and there was no physical evidence suggesting that the shooting was committed with a shotgun. Thus, the trial court did not err by not including a shotgun in its instructions defining the term "firearm."[3]

## VII. SENTENCING

Defendant challenges his sentences of 25 to 40 years each for his convictions of assault with intent to commit murder. These sentences were within the sentencing guidelines range of 270 to 900 months, or life, as enhanced for defendant's status as a fourth-offense habitual offender. Defendant argues that the trial court erred by relying on judge-found facts to score the sentencing guidelines, and also erred in scoring several of the offense variables (OVs). We disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). Whether a trial court's reliance on judge-found facts to score the guidelines violated a defendant's Sixth Amendment right to a jury trial is a question of constitutional law, which this Court reviews de novo. *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015).

Initially, we reject defendant's argument that the trial court was not permitted to rely on judge-found facts to score the guidelines, contrary to *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013). In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient, in violation of the Sixth Amendment, to the extent that they "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." To remedy this deficiency, the Court held that the guidelines are advisory only. *Id.* at 365. Under *Lockridge*, however, trial courts are still permitted to score the OVs using judicially found facts. *Id.* at 392 n 28. As this Court explained in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016),

> [t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a mandatory minimum sentence range, which constitutional violation was remedied in *Lockridge* by making the guidelines *advisory*, not by eliminating judicial fact-finding.

---

[3] We note, however, that the court's instructions were broad enough to encompass a shotgun, which also qualifies as a weapon used to expel a projectile.

Our Supreme Court decided *Lockridge* in 2015. Defendant was sentenced in December 2017. Because the guidelines were advisory at the time defendant was sentenced, the trial court's reliance on judge-found facts to score the guidelines did not violate defendant's Sixth Amendment rights.

Defendant also challenges the trial court's scoring of OV 3, OV 4, and OV 5 of the sentencing guidelines. With respect to OV 3, the trial court assessed 25 points, which is the appropriate score when a "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). Defendant argues that the trial court should have assessed, at most, only 10 points for this variable, which is the appropriate score where "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). When scoring OV 3, the trial court is required to "assign[] the number of points attributable to the [factor] that has the highest number of points." MCL 777.33(1). At trial, the doctor who treated Bucy's gunshot wound testified that Bucy would have died from his injury if she had not inserted a chest tube. This testimony supports the trial court's finding that Bucy received a life-threatening injury from the shooting. Accordingly, the trial court did not err by assessing 25 points for OV 3.

Defendant next challenges the trial court's 10-point score for OV 4 (psychological harm to a victim). When scoring OV 4, the trial court must assess 10 points if the victim suffered "[s]erious psychological injury requiring professional treatment." MCL 777.34(1)(a). In scoring this variable, a court should "[s]core 10 points if the serious psychological injury may require professional treatment" and "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). However, a trial court cannot simply assume that someone in the victim's place would have suffered psychological harm or conclude that a reasonable person in the victim's situation would have suffered a serious psychological injury. *People v White*, 501 Mich 160, 163-164; 905 NW2d 228 (2017). Rather, there must be some evidence of psychological injury on the record to justify the assessment of points. *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). In this case, Bucy reported that he suffered from "severe PTSD" (post-traumatic stress disorder) as a result of the shooting, which, along with chronic pain from his gunshot wounds, caused him to suffer daily. The trial court also observed that Bucy "displayed significant emotional pain and anxiety while recounting the events of the assault during his trial testimony." Although defendant emphasizes that Bucy had not actually sought treatment, the fact that treatment had not been sought was not conclusive. MCL 777.34(2). The trial court did not clearly err by finding that there was sufficient evidence of an actual "serious psychological injury [that] may require professional treatment" to justify the 10-point score.

Defendant also argues that the trial court erred by assessing 15 points for OV 5 (serious psychological injury to a member of the victim's family). The trial court scored this variable on the basis of its finding that Bucy's children suffered a serious psychological injury requiring professional treatment. MCL 777.35(1)(a) provides that 15 points should be scored where "[s]erious psychological injury requiring professional treatment occurred to a victim's family may require professional treatment." Fifteen points should be scored if "the serious psychological injury . . . may require professional treatment" and "the fact that treatment has not been sought is not conclusive." MCL 777.35(2). Defendant's primary objection to the scoring of OV 5 was that Bucy's children were outside the house when the shooting occurred and there was disagreement among witnesses whether additional shots were fired outside the house. Regardless of the children's physical presence at the time of the shooting, the evidence indicated

-14-

that they were at the house when the shooting occurred and they witnessed the aftermath of the shooting, including seeing their father's anguish after he had been shot and hearing his comments that he thought he was going to die. Significantly, Bucy reported that his children had also suffered from PTSD since the shooting. This evidence supports the trial court's 15-point score for OV 5.[4]

Defendant also discusses the reasonableness of his guidelines sentences for assault with intent to commit murder, including whether his sentences satisfy the principle of proportionality, which is the standard for reviewing a sentence for reasonableness. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). However, this Court only reviews departure sentences for reasonableness. *People v Anderson*, 322 Mich App 622, 636-637; 912 NW2d 607 (2018). Under MCL 769.34(10), this Court is required to affirm a sentence that is within the sentencing guidelines range absent an error in scoring the guidelines or reliance on inaccurate information. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).[5] Because

---

[4] Evidence of post-incident psychological injury often includes more than a victim's conclusory written statement that family members suffered such harm. See, e.g., *People v Calloway*, 500 Mich 180, 188-189; 895 NW2d 165 (2017) (testimony by the victim's stepfather that the victim's mother was having a hard time dealing with the situation, that the incident had a tremendous traumatic effect on him and his family, and that he would have to go through the rest of his life with a granddaughter who did not know her father supported the trial court's assessment of 15 points for OV 5); *People v Steanhouse*, 313 Mich App 1, 38-39; 880 NW2d 297 (2015), aff'd in part, rev'd in part on other grounds *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017) (scoring 15 points for OV 5 supported by trial court's observations of the demeanor of the victim's parents during their testimony, victim's testimony that his parents were "deeply affected" by the incident and were in the process of seeking psychological help); *People v Davis*, 300 Mich App 502, 512; 834 NW2d 897, abrogated in part on other grounds by *People v Hardy*, 494 Mich 430, 428; 835 NW2d 340 (2013) (scoring 15 points for OV 5 supported by evidence that the defendant's acts caused the victim's biological mother to suffer "depression and a nervous breakdown that resulted in her receiving more medication that before the crime"). Nevertheless, even if we were inclined to agree with defendant that the trial court erred in scoring OV 5, deducting 15 points from his OV score would not change defendant's minimum sentencing guidelines. As scored, defendant has 115 OV points. That puts defendant at OV level VI, which applies whenever a defendant has 100 or more OV points. Thus, deducting 15 points from defendant's score of 115 would not change his OV level VI, nor the recommended minimum sentence ranges for a fourth-habitual offender in his sentencing grid (F-VI).

[5] We note that there is precedential authority that suggests that in some cases, "unusual circumstances" may exist that overcome the presumption that a particular sentence within the guidelines range is reasonable and proportionate to the offense and the offender. *People v Steanhouse*, 322 Mich App 233, 238 n 3; 911 NW2d 253 (2017), citing *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990); see also *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000) (indicating that the presumption that a sentence within the guidelines is proportional may be overcome if a defendant presents evidence of "unusual circumstances"). No unusual circumstances exist to overcome the presumption of proportionality in this case.

defendant's sentences are within the applicable guidelines ranges, and defendant has not established a scoring error or reliance on inaccurate information, we affirm defendant's sentences.

## VIII. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises an additional claim of error in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. He complains that he was never properly arraigned on the information. Because defendant never challenged his arraignment in the trial court, this issue is unpreserved and we review the issue for plain error affecting defendant's substantial rights. *People v Henry (After Remand)*, 305 Mich App 127, 158; 854 NW2d 114 (2014).

Defendant argues that a new trial is required because he was not afforded an arraignment on the information in circuit court and he did not properly waive arraignment. MCR 6.113 governs arraignments on the information. MCR 6.113(B) provides:

> The prosecutor must give a copy of the information to the defendant before the defendant is asked to plead. Unless waived by the defendant, the court must either state to the defendant the substance of the charge contained in the information or require the information to be read to the defendant. If the defendant has waived legal representation, the court must advise the defendant of the pleading options. If the defendant offers a plea other than not guilty, the court must proceed in accordance with the rules in subchapter 6.300. Otherwise, the court must enter a plea of not guilty on the record. A verbatim record must be made of the arraignment.

MCR 6.113(C), which addresses waivers of an arraignment, provides:

> A defendant represented by a lawyer may, as a matter of right, enter a plea of not guilty or stand mute without arraignment by filing, at or before the time set for the arraignment, a written statement signed by the defendant and the defendant's lawyer acknowledging that the defendant has received a copy of the information, has read or had it read or explained, understands the substance of the charge, waives arraignment in open court, and pleads not guilty to the charge or stands mute.

Defendant was present at his preliminary examination on August 26, 2016, following which the court bound him over for trial on two counts of assault with intent to commit murder, felon in possession of a firearm, possession of less than 25 grams of cocaine, and two counts of felony-firearm. The court set a date of September 12, 2016, for defendant's arraignment in circuit court. On that date, defense counsel filed a document entitled, "Waiver of Arraignment," which simply stated, "Please take notice that Defendant, DEONTE KINWAN MCCOY, waives his right to an arraignment in open court." Only defendant's attorney signed that document. The trial court acknowledged receipt of this document, but noted that it did not indicate whether defendant stands mute or pleads not guilty. Accordingly, the court entered a plea of not guilty on defendant's behalf.

Ten days later, at a hearing on September 26, 2016, defense counsel asked to withdraw because of a breakdown in his relationship with defendant, who expressed a desire to represent himself. In the process of discussing defendant's right to self-representation, the court advised defendant of the charges against him and the possible penalties he was facing.

Defendant correctly states that the waiver document filed with the court was defective because the document (1) was not signed by defendant, (2) did not state whether defendant read the information or had it read to him, (3) did not state that defendant understood the charges against him, and (4) did not indicate if defendant was pleading not guilty or stood mute, as required by MCR 6.113(C). However, "[a] showing of prejudice is required to merit relief for the failure to hold a circuit court arraignment." *Henry*, 305 Mich App at 159; *People v Nix*, 301 Mich App 195, 208; 836 NW2d 224 (2013). Defendant has not made the requisite showing of prejudice.

First, there is nothing in the record to indicate that defendant did not agree to waive his arraignment. Second, even if defendant did not agree to waive his arraignment, he was provided with formal notice of the charges against him. "The purpose of an arraignment is to provide formal notice of the charge against the accused" and to also allow the defendant to enter a plea to the charges. *Nix*, 301 Mich App at 208. Defendant received notice of the charges against him when he was present at the preliminary examination and again at the hearing on September 26, 2016, when the court advised defendant of the charges against him after he indicated that he wanted to represent himself. Defendant also fails to explain how he was prejudiced by counsel's failure to formally enter a plea when attempting to waive arraignment. The trial court ultimately entered a plea of not guilty on defendant's behalf. Moreover, "[a]fter trial on the merits want of plea does not render a conviction invalid." *Nix*, 301 Mich App at 208, quoting *People v Weeks*, 165 Mich 362, 364; 130 NW 697 (1911). For these reasons, any error did not affect defendant's substantial rights. Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica

-17-