*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 28, 2020

v

JAJUAN MARCELLOUS CANNON,

Defendant-Appellant.

No. 347438
Wayne Circuit Court
LC No. 18-005163-01-FC

Before: BECKERING, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

Defendant, Jajuan Marcellous Cannon, appeals as of right his jury trial convictions of carrying a dangerous weapon with unlawful intent, MCL 750.226, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b.[1] The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 76 months to 20 years' imprisonment for carrying a dangerous weapon with unlawful intent and felon-in-possession, and five years' imprisonment for each count of felony-firearm, second offense. On appeal, defendant challenges the sufficiency of the evidence for his convictions and the trial court's assessment of 25 points for offense variable (OV) 1 (aggravated use of a weapon) and 10 points for OV 14 (offender's role). We affirm defendant's convictions and sentence.

## I. FACTUAL BACKGROUND

At approximately 11:00 p.m., on May 6, 2018, defendant and a group of eight friends drove two cars to Dunedin Street in Detroit, Michigan, so that defendant could have a one-on-one fight with a man named Jamil. When the group arrived at Dunedin Street, they parked on an adjacent side street, Lamothe Street. Defendant, JayJuan Casey, Brandon Williams, and "Rez" exited one

---

[1] Defendant was also charged with one count of open murder, MCL 750.316, and one count of felony-firearm, second-offense, MCL 750.227b, in connection with the open murder charge. The jury found defendant not guilty of open murder and the corresponding felony-firearm charge.

of the group's two cars and walked to the corner of Dunedin Street and Lamothe Street. The other friends remained in their car. Defendant, Williams, and Rez were each carrying a handgun and Casey was carrying an "AK." While standing at the corner, Rez pointed to the westside of Dunedin Street and defendant and Casey opened fire. Shots were returned from the westside of the street. Casey was shot twice in the back and fell to the ground. The group quickly left the area and Casey ultimately died from his injuries.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his four convictions because the only evidence supporting his convictions was the testimony of Karlos Ross and Dante Moody, two of the men who were with defendant and Casey at Dunedin Street. Defendant argues that Ross and Moody were not credible witnesses and were sufficiently impeached with their prior inconsistent and self-serving statements. We disagree.

This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). To determine whether there was sufficient evidence presented to support a conviction, this Court considers whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). This standard of review is deferential and the evidence is to be viewed in the light most favorable to the prosecution. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and all reasonable inferences drawn therefrom can constitute sufficient proof of the elements of a crime. *Id.*

When reviewing the sufficiency of the evidence, " 'this Court should not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses.' " *People v Muhammad*, 326 Mich App 40, 60; 931 NW2d 20 (2018), quoting *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000). Issues regarding the credibility of a witness are factual determinations for the jury to decide. See *People v Hieu Van Hoang*, 328 Mich App 45, 68; 935 NW2d 396 (2019).

To convict defendant of carrying a dangerous weapon with unlawful intent, the prosecution had to prove beyond a reasonable doubt that defendant "(1) went armed—while possessing a firearm or other dangerous weapon, moved from one location to another location—and (2) at the time of going armed, had the intent to use the weapon unlawfully against another person." MCL 750.226; *People v Ackah-Essien*, 311 Mich App 13, 22; 874 NW2d 172 (2015). To convict defendant of felony-firearm, the prosecution had to prove beyond a reasonable doubt that defendant "possessed a firearm during the commission of, or the attempt to commit, a felony." MCL 750.227b; *Muhammad*, 326 Mich App at 61 (quotation marks and citation omitted). In order to convict defendant of being a felon-in-possession of a firearm, the prosecution had to prove beyond a reasonable doubt only that defendant possessed a firearm, since defendant stipulated at trial to his prior felony conviction and that he had not regained his rights to possess a firearm. Possession can be established through direct or circumstantial evidence and is a factual question for the factfinder. *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010).

The evidence at trial showed that defendant left the home on Coyle Street to go fight Jamil. Moody testified that he understood that defendant and Jamil were going to fistfight, but he also

testified that defendant left the home on Coyle with a handgun, kept the handgun in the passenger compartment of the car as he rode to the Dunedin Street location, got out of the car with the handgun, and immediately walked to the corner of Dunedin Street and Lamothe Street and began shooting his gun toward the westside of the street as soon as Casey started shooting. This evidence, if believed by the jury, was sufficient to prove that defendant left Coyle Street with a dangerous weapon and with the intent to use it unlawfully, thus satisfying the elements of carrying a dangerous weapon with unlawful intent, and that that dangerous weapon was a handgun, thus satisfying the elements of one count of felony-firearm. The fact that defendant possessed a handgun, along with the stipulations previously mentioned, satisfied the elements of felon-in-possession and of a second count of felony-firearm.

Defendant argues that this evidence is not sufficient to support his conviction because it is based on the testimony of Ross and Moody, witnesses who are not credible. In essence, defendant urges this Court to reject the jury's determination of the witnesses' credibility and to replace it with his own. We decline to do so.

The jury was aware that Ross and Moody made inconsistent statements, were themselves involved in criminal conduct, and sought to minimize their roles in the events leading to defendant's convictions. For example, the jury heard Ross recount the details of the shooting at trial, but also heard him impeached with his preliminary examination testimony that he could not remember everything that happened because he had been smoking marijuana before the group went to Dunedin Street. The jury also heard that, at the time of defendant's trial, Ross was waiting to be sentenced for a larceny of a person conviction and that Moody had originally been charged with second-degree murder in the present case but had pleaded guilty to being an accessory after the fact. Further, the jury heard Ross and Moody minimize their involvement in the incident. Ross testified that, while everyone in his car had a handgun, he did not; rather, someone else placed a handgun in the backseat of the car for him to use if he wanted to. Similarly, Moody testified that he never exited the car because he was not feeling well, and when he initially spoke to the police he was untruthful because he did not want to be involved. Yet the jury also heard from forensic technicians who found shell casings in locations consistent with the testimony of Ross and Moody.

It is the jury's role to determine the credibility of the witnesses, see *Muhammad*, 326 Mich App at 60, and the trial court properly instructed the jury regarding this responsibility. The court informed the jury that it did not have to accept or reject everything a witness said, but could believe all, part, or none of a witness's testimony. The court further instructed the jury that, when determining a witness's credibility, jurors should use their common sense and everyday experience and consider such factors as the witness's demeanor while testifying, whether a witness had a special reason to tell the truth or to lie, the existence of any "promises, threats, suggestions, or other influences that affected how the witness testified," and how a witness's testimony aligned with the other evidence presented. "It is axiomatic that jurors are presumed to have followed their instructions." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330, 337 (2009). Defendant's jury, having heard the evidence presented at trial, including the testimony of Ross and Moody and their subsequent impeachment, and having been properly instructed by the trial court, chose to credit Ross's and Moody's testimony. We will not interfere with or second-guess the jury's credibility determinations. See *Muhammad*, 326 Mich App at 60; *Hieu Van Hoang*, 328 Mich App at 68; see also Nowack, 462 Mich at 400 (stating that a reviewing court is "required to draw all reasonable inferences and make credibility choices in support of the jury verdict").

Defendant also argues that there was insufficient evidence to support his convictions because Jovanna Owens, a woman who was sitting in her car at the corner of Dunedin Street and Lamothe Street when the shooting occurred, did not identify defendant as the shooter, and because Detroit Police Detective Gentry Shelby testified that defendant's cellular telephone records did not show that he was near Dunedin Street at the time of the incident. However, the mere fact that Owens did not identify defendant as the shooter did not necessarily undermine the testimony of Ross and Moody that defendant possessed and discharged a handgun. Regarding defendant's cellphone, Detective Shelby did not simply state that, on the basis of defendant's cellphone records, defendant was not near Dunedin Street at the time of the incident. Rather, Detective Shelby explained that he was unable to determine defendant's location at the time of the incident on the basis of his cellphone records because neither of the two cellphones in defendant's possession at the time of his arrest showed any activity during the seven-hour period surrounding the time the of shooting.

Viewing the evidence in the light most favorable to the prosecution and deferring to the jury's assessment of the witnesses' credibility and the weight to give certain evidence, *Muhammad*, 326 Mich App at 60, we conclude that the prosecution presented sufficient evidence to support defendant's jury conviction for carrying a dangerous weapon with unlawful intent, felon-in-possession, and two counts of felony-firearm. Accordingly, we affirm defendant's convictions.

III. OV 1

Defendant next argues that the trial court erred when it assessed 25 points for OV 1. Defendant asserts that the judge's conclusion that he discharged a weapon constituted impermissible judicial fact-finding that was contrary to the jury's acquittal on the charge of open murder. We disagree.

This Court reviews "for clear error the trial court's factual determinations used for sentencing under the sentencing guidelines, facts that must be supported by a preponderance of the evidence." *People v Dickinson*, 321 Mich App 1, 20-21; 909 NW2d 24 (2017). The trial court's factual determinations are clearly erroneous if this Court is left with a definite and firm conviction that a mistake was made by the trial court. *Id*. This Court reviews de novo the trial court's interpretation and application of the sentencing guidelines. See *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

MCL 777.31(1)(a) instructs the trial court to assign 25 points to OV 1 if "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon." In *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015), the Michigan Supreme Court rendered the sentencing guidelines advisory and concluded that Michigan's sentencing guidelines scheme allows judges to find by a preponderance of the evidence facts that may be used to increase a defendant's mandatory minimum punishment. See also *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016) (emphasizing that judicial fact-finding remains part of the process of calculating the sentencing guidelines in Michigan). When calculating the sentencing guidelines, the trial court may consider all of the evidence in the trial court record, including the contents of the presentence investigation report (PSIR), plea admissions, and testimony presented at a preliminary examination. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The facts that the sentencing court relies on when scoring

the guidelines must be supported by the preponderance of the evidence. *Dickinson*, 321 Mich App at 20-21.

The Michigan Supreme Court directly addressed the issue of whether a judge may consider a crime of which the jury acquitted the defendant when sentencing him for a crime of which he was convicted in *People v Beck*, 504 Mich 605;939 NW2d 313 (2019). The Court stated that "[o]nce acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." *Id*. at 609 However, the Supreme Court agreed with courts from other jurisdictions that:

> [w]hen a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent." [*Id*. at 626.]

The trial court erred when sentencing the defendant in *Beck* when it reasoned that, even though the jury could not find that defendant committed the homicide of which he was charged beyond a reasonable doubt, "the Court certainly finds that there is a preponderance of the evidence that he [shot the victim]." *Id*. at 611.

Unlike the trial court in *Beck*, the trial court in the present case did not assess 25 points for OV 1 on the basis of finding that defendant shot Casey. Rather, at sentencing the trial court specifically noted that the relevant question with regard to OV 1 was not whether defendant committed a homicide, but "whether there were sufficient facts at trial to establish that he discharged a weapon." Whether defendant discharged a weapon at or toward a human being is uncharged conduct. Moody and Ross both testified that defendant shot a handgun toward the westside of the Dunedin Street after Casey started shooting. Owens was sitting in a white Audi A4 that defendant and Casey were shooting toward, and her car was shot twice. Moreover, Casey was standing only four or five feet in front of defendant when defendant was shooting. Thus, the trial court did not assign 25 points to OV 1 because it concluded that defendant committed an acquitted crime, open murder, under the preponderance of the evidence standard. Rather, the trial court found that defendant discharged a weapon toward a human being by a preponderance of the evidence. On this record, the trial court did not err in assigning 25 points to OV 1.

## IV. OV 14

Defendant also argues that the trial court erred in concluding that defendant was the leader of a multiple offender situation and assessing 10 points for OV 14. Defendant asserts that he was not a leader in a multiple offender situation because Casey exited the car first and initiated the shooting. We disagree.

MCL 777.44(1) instructs the trial court to assign 10 points to OV 14 when "[t]he offender was a leader in a multiple offender situation." When scoring OV 14, "[t]he entire criminal transaction should be considered." MCL 777.44(2)(a). "[A] 'leader' is defined in relevant part as 'a person or thing that leads' or 'a guiding or directing head, as of an army or political group.' To

'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014). This Court has explained that a defendant is a leader if he "acted first or gave directions or was otherwise a primary causal or coordinating agent." *Dickinson*, 321 Mich App at 22 (quotation marks and citation omitted). Moreover, a "multiple offender situation" is "a situation consisting of more than one person violating the law while part of a group." *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880 (2013). A defendant may be a leader of multiple offender situation even if he is only accompanied by one other person and that other person is not charged in connection with the crime for which the defendant was convicted. *Id.* at 287-288. "If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader." MCL 777.44(2)(b).

Defendant went to Dunedin Street so that he could have a one-on-one fight with Jamil because defendant had a "beef" with Jamil. Eight other people went with defendant to serve as protection for him. Contrary to defendant's argument, Moody did not testify that, when the group arrived to Dunedin Street, Casey was the first person to exit the car. When listing the people who exited the car, Moody listed Casey's name first, but he testified that defendant said, "come on, get out," and that defendant exited the vehicle first. Defendant, Casey, and Rez then walked toward Jamil's house and Casey and defendant opened fire. The record supports the conclusion, by a preponderance of the evidence, that defendant "gave direction or was otherwise a primary causal or coordinating agent" in this crime. Therefore, the trial court did err in assessing 10 points for OV 14.

Affirmed.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro